BLANCHARD, J.
The indictment against this man was that he did, on or about a time named, willfully, feloniously and knowingly cohabit with his daughter, Desse De Hart— the parties being related to each other within the degrees of consanguinity within which marriage is prohibited by articles 94 and 95 of the Civil Code of Louisiana.
The jury returned the simple verdict “Guilty,” and from a sentence and judgment of 20 years at hard labor, he appeals.
A motion to quash the indictment, a motion in arrest of judgment and an objection (shown by a bill of exception) to any evidence in proof of the charge of the indictment, raise, practically, the same issues.
The first contention is that the law of the state does not define what incest is, nor denounce it as a crime.
The second contention is that Act No. 78 of 18S4, which is the statute under which the indictment is laid, is unconstitutional in that in its enactment articles 29, 30 and 31 of the Constitution of 1879, the then organic law, were violated.
A third contention is that a crime cannot be defined by a reference to a body of laws relating to private rights.
In 1855 (Act No. 120) it was enacted:—
“That whoever shall commit the crime of incest shall, on conviction thereof, suffer imprisonment at hard labor for life.”
The first prosecution for incest, under this statute, that found its way to this court, was in the year 1878.—State v. Henry Smith, 30 La. Ann. 846.
It was there held that the crime of incest, although denounced, was not defined by any statute of the state, and, hence, the conviction of the accused could not stand.
Chief Justice Manning, in concluding the opinion of the court, said:—
“We are compelled to discharge the prisoner, and, in doing so, call the attention of the legislative department of the government to the defect in the statute, to the end that it may be speedily remedied. It should declare that intermarriage or cohabitation between persons within the degrees of consanguinity within which marriage is unlawful, constitutes the crime of incest, or such words as are used elsewhere in other criminal statutes, and which have always been held to be necessary for the proper definition and punishment of crimes, which, like this, vary in meaning according to the temper or religious notions of different countries.”
Acting- on the matter thus called to public attention, the General Assembly, in 1884, en *573 acted a statute (Act 78 of 1884) the title of which is:—
“An act to define the crime of incest and provide for the punishment thereof.”
It declares that:—
“Whoever shall hereafter knowingly intermarry, or cohabit without marriage, being within the degrees of consanguinity within which marriage is prohibited by articles 94 and 95 of the Revised Civil Code of the state of Louisiana, shall be deemed guilty of incest, and on conviction thereof shall suffer Imprisonment at hard labor for not less than ten years nor more than twenty years: pro vided, that nothing in this law shall apply to marriages lawfully contracted by foreigners, or inhabitants of other states, where the parties subsequently remove to this state.”
It will be observed this statute makes incestuous cohabitation (in the sense of “carnal connection”) between a man and woman who are related to each other within the degrees of consanguinity within which marriage is prohibited by articles 94 and 95 of the Code.
Consanguinity means the connection or relation of persons descended from the same stock or common ancestor, and it is either lineal or collateral. Lineal is that which subsists between persons of whom one is descended in a direct line from the other, as between son, father, grandfather, great-grandfather and so upwards in the direct ascending line; or between son, grandson, great-grandson and so downwards in the direct descending line. Collateral kindred agree with the lineal in this, that they are descended from the same stock or ancestor, but differ in this, that they do not descend one from the other.
2 Blackstone’s Com. 202; Black’s Law Dict.; Bouvier’s Law Dict.
Article 94 of the Code prohibits marriage between persons related to each other in the direct ascending or descending- line, and this prohibition extends alike to legitimate and illegitimate children.
Article 95 prohibits marriage among collateral relatives as follows: — between brother and sister, whether of the whole or of the half blood, whether legitimate or illegitimate, between uncle and niece, between aunt and nephew, and also between first cousins (the inhibition as to first cousins being added by Act No. 9 of 1902).
The case of the defendant at bar comes within the prohibition of article 94.
He is charged with carnally knowing his own daughter. She is related to him in the direct descending line, and the act of 1884, taken in connection with the article of the Code, specifically defines this to be incest. It was cohabitation with one related to him within the degree of consanguinity prohibited by law.
The definition is legally sufficient. State v. Guiton, 51 La. Ann. 156, 158, 159, 24 South. 784.
Nor is there force in the contention that the law does not denounce incest, as thus defined, a crime.
An act, a thing done, is denounced when the .law declares it a crime and provides a punishment for it.
The statute of 1884 does both. Its very title is “to define the crime of incest and provide for the punishment thereof,” and in the body of the act it is prescribed that he who cohabits with one within the prohibited degrees of consanguinity shall be deemed guilty of incest — i. e., the crime of incest— and on conviction thereof shall suffer imprisonment at hard labor for not less than 10 nor more than 20 years.
“Every law enacted by the General Assembly,” declares article 29 of the Constitution of 1879 and article 31 of the Constitution of 1898, “shall embrace but one object, and that shall be expressed in its title.”
The statute of 1884 does not contravene this provision of the organic law. There is but one object embraced in the law, and that object is expressed in its title.
The “object” of a law is the aim or purpose of the enactment. State v. Ferguson. 104 La. 249, 28 South. 917.
The aim and purpose of the act of 1884 is to prevent the crime of incest by punishing it.
The definition of the crime and the denunciation of it, by the infliction of a penalty for its commission, are part and parcel of the one object of the law.
Nor does the statute under discussion contravene article 30 of the Constitution of 1879, which is the same as article 32 of the Constitution of 1898.
These articles provide that no law shall be revived or amended by reference to its *575 title, but in such cases the act revived, or section amended, shall be re-enacted and published at length.
The statute of 1884 does not assume to revive or amend any law or statutory enactment by reference to its title, or otherwise.
It is, itself, an independent, substantive enactment, repealing, by express declaration, all laws or parts of laws in conflict with it.
Articles 31 of the Constitution of 1879 and 33 of the Constitution of 1898 prohibit the General Assembly from adopting any system or code of laws by general reference to such system or code, and provide that in all eases there shall be recited at length the several provisions of the laws it may enact.
The argument of the defendant is that when the act of 1884 declares that whoever shall cohabit with a person related within the degrees of consanguinity within which marriage is prohibited by articles 94 and 95 of the Civil Code, it infringes the Constitution in that it is the attempted adoption of a system or code of laws by general reference to the same, instead of reciting at length the provisions thereof it proposes to enact.
His counsel declare the framers of the Constitution meant to avoid the very thing which the act of 1884 attempted to do, viz: — define a criminal offense by reference to some system of laws, which it was difficult to know well at any time, and which difficulty would increase as society receded from the time of its adoption.
The plausibility and apparent force of this argument disappears when we consider articles 30 and 31 of the Constitution of 1879 (identical with articles 32 and 33 of the Constitution of 1898) in connection with each other, and when we come to ponder upon the intent and meaning of the later article.
Article 30 has reference, clearly, to our own laws or statutes, which are not to be revived or amended by reference to title merely, but there is to- be a re-enactment and publication in full of the act revived or section amended.
Then follows article 31 prohibiting the adoption of any system or code of laws by general reference to the same.
We are inclined to think that the words “any system or code of laws,” as used in the article, means systems or codes of laws other than our own — systems of law, codes of law in vogue in other countries and jurisdictions; that these are'not to be adopted by merely a general reference to the same, but that such systems or codes, or the several provisions of the same, wanted to be adopted or enacted here, are to be recited .at length in the adopting act.
And this view is strengthened when it is considered that we have and can have in Louisiana no system or code of laws other than such as have been or may be adopted by the people, either directly or through their representatives of the lawmaking branch of the government, and that, therefore, whatever system or code of laws we have here already enjoys the status of an adopted system or code, and, hence, the article of the Constitution could not have reference to such when it declares the General Assembly shall never adopt any system or code of laws by general reference to same; that it is not necessary to “adopt” again that which is already adopted.
But if it be true that article 31 (33 of the present Constitution) applies as well to our own laws or statutes as to the systems or codes of laws of other countries, we must still hold it is not infringed by the act of 18S4.
The General Assembly in enacting the statute of 1884 did not “adopt” a “system or code of laws by general reference to such system or code of laws,” within the meaning of the constitutional provision. The statute makes, merely, a particular reference to two articles of the Civil Code, a system of laws long since adopted in Louisiana, and this in aid only of its purpose to define accurately the crime of incest which the act denounces and punishes.
The contention that a crime cannot be defined by a reference to a body of laws relating to private rights, is founded on the position taken that the Civil Code is a body of laws relating to private rights.
While this may be true, we fail to find any reason for the objection that it is not permissible to refer to the Code for assistance in defining what is denounced as a crime, other than the constitutional objections which have been already considered and found not tenable.
Objection is made to the indorsement on the bill of indictment, to wit: — “Cohabiting *577 ■with a person related within the degrees of consanguinity prohibited by the Civil Code of Louisiana,” and it is said the defendant was indicted, tried and convicted for such crime when there is none such known to the laws of the state.
The indorsement of the name of the offense on the back of an indictment is no part of the finding of the grand jury. State v. Roshfrischt, 12 La. Ann. 383; State v. McGinnis, Id. 743; State v. Mason, 32 La. Ann. 1018; State v. Russell, 33 La. Ann. 135.
The defendant was not indicted, tried and convicted for what is contained in the indorsement carelessly made by some one on the back of the bill of indictment. He was indicted, tried and convicted for what appears in the bill itself. It need not have contained any other caption than “A true bill,” with the signature of the foreman of the grand jury.
Because the caption or formula indorsed on the bill was repeated by the clerk in the entries on the minutes of the court, includ-' ing the entry relating to the sentence, it is assigned as error patent on the face of the record that the defendant was sentenced for a crime not known to the laws of Louisiana.
This objection is effectually disposed of by State v. McGinnis, 12 La. Ann. 744, where it was said that the concise indorsement of the character of the offense upon an indictment is for convenience only, and forms no part of the substance of the charge, and that a mistake of the district attorney, or the clerk, in making such indorsement, neither enlarges, reduces, nor vitiates the accusation contained in the body of the indictment.
“The prisoner,” said the court in that case, “is never called to answer to the condensed title of a bill or information; he is arraigned and tried upon the bill or information itself.”
So that, as distinctly held in that case, an error of the clerk in entering upon his minutes a brief description of the nature of the offense whenever he has occasion to make an entry relative to a case, does not change the formal accusation preferred, nor affect the validity of the proceedings had under such accusation.
When, therefore, the jury, in the instant case, found a general verdict of guilty, they convicted the prisoner in manner and form as charged in the indictment; not as charged in the indorsement nor in the clerk’s entries; and when the judge imposed the sentence of 20 years at hard labor it was for the offense charged in the bill and of which the defendant was found guilty; not for .something the clerk wrote in his minutes relating to the sentence. And what was charged in this bill of indictment is incest under the law, and sufficed even though the word “incest” be not used.
The state offered to show acts of carnal intercourse by the defendant with his daughter prior to the time alleged in the bill of indictment, and also proved the same intercourse within the time laid in the indictment. Evidence showing prior acts was objected to and a bill taken to its admission.
The ruling of the court was not erroneous. The prisoner was not sought to be convicted on the prior acts, but proof of the same was admissible as tending to establish commencement and continuance of the intercourse down to the time laid in the indictment. Eor this purpose the testimony was properly received.
“Prior acts of incest between the same parties may always be proved.” Underhill on Crim. Evi. § 396. See, also, A. & E. Ency. of Law (2d Ed.) vol. 16, p. 139; McLains Crim. Law, vol. 2, p. 285, § 1124.
Defendant offered to prove by a witness tendered acts of sexual intercourse between the prosecuting witness, Desse De Hart, and parties other than defendant.
This was objected to by the state on the ground that acts of carnal intercourse which the daughter may have had with other men constituted no justification or excuse for the same acts with her by the defendant.
The objection was sustained and a bill taken. The judge states in the bill the defendant claimed the right to introduce the evidence ' because the prosecuting witness had testified no other young men had ever visited her, and the testimony offered as to sexual intercourse with other men was in rebuttal of her statement.
To this contention the judge, in effect, replies that while it was competent to introduce evidence of the visits to her of other men to rebut the daughter’s statement that *579 no young men had visited her, it was not competent, under the guise of such rebuttal testimony, to go further and get in evidence not, per se, legally admissible. He furthermore states that, as he understood it, the real object of the testimony offered was to prove sexual intercourse with other men, which is not permissible under the authorities.
We are not prepared to say the ruling made was erroneous.
We do not understand the defendant was denied permission to prove that other men visited the. prosecuting witness. The ruling of the court was confined to denying him permission to offer testimony that such other men had carnal intercourse with her.
To prove previous guilty acts of the female with other men is no defense in an incest case, and, therefore, evidence tendered to show such acts is inadmissible. McLains’ Crim. Law, vol. 2, p. 258, § 1124; A. & E. Ency. of Law (2d Ed.) vol. 16, p. 139.
The bill’ of exceptions is silent as to any declaration by the defendant of the purpose for which he offered the testimony. It merely recites that he “offered to prove by Freeman De Hart acts of sexual intercourse between the prosecuting witness Desse De Hart and third, persons to this cause.”
On this bare statement the objection of the state, recited in the bill, viz: — that any connection Desse De 1-Iart may have had with other men is no justification for the offense charged against her father, was well taken.
It is now urged in brief of counsel for defendant that the evidence was wanted to repel or destroy the corroboration of the prosecuting witness’ statement, viz: — that the father was guilty of acts of carnal intercourse with her, arising from the circumstance of her pregnancy.
All the grounds relied on for the admission of the evidence should have been presented to the trial judge and his ruling had thereon. On the only ground presented -to him, as shown by the bill and the written statement made part of it, he ruled correctly in excluding the evidence, even admitting, for the sake of the argument, that it might have been admissible on the ground last presented if timely urged.
Another objection urged is that the defendant should have been granted a new trial because convicted on the uncorroborated testimony of an accomplice.
It is questionable, indeed, whether the daughter is to be viewed as an accomplice, especially since she submitted, or was made to submit, at the early age of 12 or 13 .years to the lascivious embraces of her unnatural parent, which connection, it would seem, continued until she was 17 years old — that being her age at the time of the trial.
But, if viewed as an accomplice, her evidence was admissible and on it alone the jury could convict.
Oh the subject of the testimony of accomplices this court said in State v. Russell, 33 La. Ann. 138, that the authorities not only authorized its introduction, but justify conviction by the jury on such testimony although uncorroborated; that the circumstance of the witness being an accomplice of the party on trial affects his or her credibility only, of which the jury are to judge— citing text-writers and many decisions in support.
To the same effect was the ruling of the court in State v Prudhomme, 25 La. Ann. 522; State v. Vicknair, 52 La. Ann. 1921, 28 South. 273; Rice on Evidence, 3d vol., pp. 826, 827.
It is urged that this verdict should be set aside because the judge did not charge the jury on the subject of the caution to be observed in considering the evidence of the accomplice in the respect of its being sufficient to convict.
No bill of exceptions to the judge’s charge, as to what it contained or did not contain, appears in the record. It does not appear that the judge was requested to charge as to the caution with which an accomplice’s testimony is to be received and given effect to, and if such request were made and refused the same was not excepted to and is not, therefore, brought to our attention in such way that we may consider it.
In giving his reasons for overruling the motion for new trial the judge says he did not charge the jury as to the caution to be observed with respect to the prosecuting witness’ testimony because, in his opinion, there was sufficient corroborating circumstances, testified to, to support her testimony.
This court held, in State v. Prudhomme, 25 La. Ann. 525, and again in State v. Rus *581 sell, 33 La. Ann. 138, that the rule requiring the judge to charge the jury that the testimony of an accomplice needs confirmation is rather a rule of practice than a rule of law, the application of which is for the discretion of the judge by whom the case is tried, and in its application much depends on the nature, of the offense and the extent of the witness’ complicity.
The searchlight of painstaking investigation has failed to discover reversible error lurking in this transcript, and the judgment appealed from is, therefore, affirmed.