MONROE, J.
Eefendant prosecutes this appeal from a conviction of incest and sentence of imprisonment at hard labor.
[1] 1. The first bill of exception to which our attention is attracted shows that, after Charley Cudd, a witness for the state, had testified, defendant placed on the stand Calvin Swindall, and offered to prove by him that he had-—
“heard Charley -Cudd say that he had drilled the principal witness, Miss Jessie Swindall, as to what she should swear and how she should swear, and he prepared her testimony in advance of its being given, and that he stayed by her while she did make her statement to the district attorney, in order to see that she did state it as he had prepared it.”
The testimony being offered, as the bill recites—
“independently of any evidence offered by the state, for the purpose of proving a conspiracy between this prosecuting witness, Miss Jessie Swindall, and the assisting prosecuting witness, her brother-in-law, Charley Cudd, to frame up her testimony so as to convict the accused.”
The court ruled that the testimony was inadmissible for the purpose for which it was offered, as it purported to relate to a statement, made by one of the parties to an alleged conspiracy, when, in the opinion of the court, there was not sufficient proof to establish prima facie the existence of such conspiracy.
We find no error in this ruling. Whether proof sufficient to establish prima facie the fact of conspiracy should first be required, before admitting evidence as to the acts and statements of the alleged conspirators, or 'whether such acts and statements should be admitted as of themselves proving or tending to prove the conspiracy, is a matter within the discretion of the trial judge.
“The general principle affecting the order of evidence leaves it ultimately to be controlled by the trial court’s discretion, subject to certain provisional rules, unless special considerations overthrow them. * * * In the present application, the rule for conditional relevancy * * * naturally applies; i. e., the statements of A. being receivable against B. on the hypothesis that A. and B. have conspired, some evidence of the conspiracy must ordinarily be furnished before offering the statements of A.; in a given case, the trial court’s discretion may relax this rule.” Wigmore on Evidence, vol. 2, pp. 1079, 1282. See, also, Wharton’s Criminal Evidence (9th Ed.) pars. 968, 968a; Archbold’s Criminal Pleading, Evidence and Practice (24th Ed.) p. 365; Roscoe’s Criminal Evidence (13th Ed.) p. 353; Bishop’s New Criminal Practice, vol. 2, par. 227 et seq.; Marr’s Criminal Jurisprudence, p.664; State v. Bolden, 109 La. 484, 33 South. 571; State v. Gebbia, 121 La. 1105, 47 South. 32.
[2] 2. Counsel for defendant then asked the witness Calvin Swindall:
“Is it not a fact that the statement made to you by Charley Cudd, when he returned from Alexandria with Miss Jessie Swindall, on the occasion when she gave her testimony before the district attorney, was made by him in the presence of Miss Jessie Swindall, and that those statements, made by Cudd, were not denied by her?”
To which question the district attorney objected, on the ground that it was an attempt to do indirectly what the court had just ruled could not be done directly, and—
“that, to permit the witness to answer the question would be to permit him to give the admissions and declarations of the party when the court has excluded' that evidence; and for the additional [reasons] urged to the introduction of the evidence when first submitted; and, on the additional ground that no conspiracy has been shown to exist, and for that reason the acts or declarations are not admissible.”
Which objection was sustained by the court for the reasons assigned in the preceding bill. The bill taken to the ruling so made contains the following recital, or statement, by defendant’s counsel, to wit:
“The above ruling of the court is objected to, for the reason that the accused, in asking the above question, asked it for the purpose of showing a prima facie conspiracy between these two witnesses, by establishing the fact, by the witness on the stand, that Charley Cudd had stated to him, in the presence of Jessfe Swindall, that he had assisted her in preparing this statement; that he had told her what to swear *765 to and how to make these statements; that he had stayed with her while she made these statements to the district attorney, for the purpose of seeing that she made them as he had taught; and that these statements, as made in Miss Jessie Swindall’s presence, were heard by her, and were not denied by her; this evidence being offered for the purpose of coming within the purview of the above ruling.”
It seems clear that a statement, made by one of two alleged conspirators in the presence of, and not denied by, the other, tending to show the existence of a conspiracy between them, is admissible for the purpose of proving the conspiracy; and, as the statements sought to be proven had that tendency, and are said to have been made under those circumstances, it follows that defendant ought to have been allowed to prove the statements, together with the circumstances, and, as the point involved was material to his defense, that the exclusion of the testimony was reversible error.
[3] 3. Counsel for defendant asked Calvin Swindall the following question, for the purpose of contradicting certain testimony said to have been given by Charley Cudd, a state witness, to wit:
“Were you present when Miss Jessie Swindall and Charley Cudd returned from Alexandria, on the occasion when she made her statement to the district attorney, and, if so, did you hear Charley Cudd state, in the presence of Jessie Swindall, that he had prepared her testimony which she had made [sic]; that he had drilled her how to make that statement; that he had stayed with her while she made it, for the purpose of seeing that she made it as she had been taught it by him; and, is it a fact, or not, that when he made this statement in her presence she did not deny it?”
The question was objected to, on the ground:
“That no foundation had been laid; * * * that the witness Charley Cudd, while on the stand, was not asked whether or not he had made any statement to, or in the presence of, Calvin Swindall at this time, or at any place.”
There is, however, attached to the bill a portion of the cross-examination of Charley Cudd, from which it appears that he was asked whether he had made the statement attributed to him by the question, and that he answered, “No.” The exclusion of the question was therefore an error.
[4] 4. It appears from another bill that Dr. Glass, a witness for the defendant, testified that some weeks before the trial the prosecutrix, who was the principal witness for the state, had given him a letter, to be delivered to her father, the accused, who was then in jail, which contained the proposition:
“That she would not testify against him if he paid her the sum of $700; that he showed the letter to Mr. John Andries, and read it to Mr. and Mrs. Josiah Miller; that when Charley Ciidd returned from Alexandria a few weeks since, on the trip when he took Jessie Swindall to make her statement to the district attorney, he heard him say to Calvin Swindall, who was complaining of his having taken his sister to Alexandria, without her having been summoned, that he [Cudd] intended to see this thing through, as he had billed it; that he had gone with her and remained with her while she made the statement, in order to see that she made the statement as he had posted her to make it; that having heard this conversation was the reason why he became doubtful as to the honesty of this prosecution, and had lost interest in the evidence of Charley Cudd as a state witness.”
It further appears that after the defense had closed its case the state offered three witnesses, who swore that they would not believe Dr. Glass under oath; that when the state closed in the rebuttal the defendant offered three witnesses to prove that Dr. Glass was entirely worthy of belief, and that they would not hesitate to believe him, which testimony was objected to, and excluded, for the following reasons:
“The district attorney requested the court to continue with the tidal until 12:30, so as to let the witnesses be discharged and leave on the Watkins train. At 12:30 p. m. the state closed its case, and so announced. The witnesses for the state were then discharged, being under the rule, by the district attorney, so as to let them go on the Watkins road home. The court took a recess until 2 p. m., and, after the jury had been brought in and the district attorney ordered to proceed with his argument, counsel for defendant then said he wished to introduce evidence of three witnesses to prove the good reputation of Dr. Glass, which was objected to by the district attorney. The objection *767 was sustained, as the offer had not been made in time, before the witnesses for the state had been discharged, and only after the recess of the court and after the district attorney had been ordered to proceed with his argument. * * * To -which ruling of the court the accused objected, on the ground that it deprived him of the right to sustain the character of his witnesses; that it was unjust to him, and was bound to injure him, to make this attack, for the first time, in closing the state’s case, and then deprive him of the right to sustain the character of his witness; that this did not deprive the state of the fight to close its case or offer any other evidence on this question, after the defense had once had an opportunity to be heard; that the defense had no right to offer this evidence until the state had put his character for truth and veracity at issue, his good character being presumed by the law until questioned by the state; and that such ruling was bound to result in injury to the accused, and did so.”
There can be no doubt that either the state or the defendant, in a criminal prosecution, has the right to attack the credibility of an adverse witness, and has likewise the right to meet an attempt to impeach its or his witness by evidence in support of his character for veracity.
“Under the same general conditions as those expressed as limiting the impeaching of witnesses [says an eminent author], the party calling a witness may sustain him by calling witnesses to show that his reputation for truth and veracity is good, and the sustaining witnesses would believe him on his oath. * * * Such rebutting evidence is made admissible by the mere fact that the impeaching party examines an impeaching witness as to the impeached witness’ character for truth and 'veracity. It is further held that such evidence may be admitted on particular discrediting facts being developed against the witness in his cross-examination, especially when he is in the position of a stranger, testifying to isolated facts. A fortiori is this the case, when the opposing party introduces, as part of his case, evidence directly reflecting on the character of the witness.” Wharton’s Or. Ev. (9th Ed.) § 491.
In a case recently decided by this court, it was held (quoting from the syllabus):
“Refusal to permit defendant to impeach a material witness for the prosecution, testifying for the first time in rebuttal of evidence adduced by defendant, which evidence was offered to contradict and impeach the sole witness by whom defendant was directly connected with the crime, was reversible error.” State v. Kinchen, 126 La. 40, 52 South. 186.
Where, in rebuttal, the state, upon the one hand, confines itself to rebutting evidence, or, upon the other hand, offers evidence which is not- in rebuttal of anything that has been testified to by the defendant’s witnesses, the defendant has no right to demand a further hearing; for, in the case first stated, he has already been heard, and, in the case last stated, his proper course is to object to the evidence offered by the state. Whether, therefore, in either case, he shall be heard again is a matter that is within the discretion of the trial judge. In the instant case, however, though the testimony offered by the state cannot be said to have been in rebuttal of anything testified to by defendant’s witnesses, it was nevertheless testimony which the state had the right to offer, and it would have been a vain thing for defendant to have objected to it. The right of the defendant to meet the testimony thus offered, and to sustain the character of his witness thus attacked for the first time, was therefore as much beyond the control of the court as was the right of the state to make the attack; and, as it was vitally important to defendant that the character of his witness should be sustained, it follows that the exclusion of the testimony offered for that purpose was reversible error. Nor does it affect the question that the court, for the convenience of the prosecution, had continued its morning session beyond the usual hour, since the defendant had no control of that matter. When the proper time came, he offered his testimony, and that was all that could have been required of him.
[5] 5. We find a bill of exception which shows that the prosecutrix was asked by the district attorney, and then by the judge, and afterwards, on cross-examination, by defendant’s counsel, for the purpose of laying a foundation for her contradiction, whether she had ever had carnal knowledge .of any man *769 other than her father; that defendant thereafter placed a witness on the stand, and asked him whether he had not, on various occasions, had carnal knowledge of the prosecutrix, advising him, at the same time, that he need not answer if he feared that his answer might subject him to criminal prosecution, and that the witness thereupon, and for the reason suggested, declined to answer; that the ruling of the court, however, was that it was immaterial, for the purposes of the case, whether the prosecutrix had had such carnal knowledge or not, and that she could not be contradicted on a collateral issue ; and that, the witness having declined to testify, there was no impeaching testimony before the court. The bill recites that defendant did not except to the ruling that the witness could not be compelled to testify, but did except to the ruling that the testimony was inadmissible for the purpose of attacking the credibility of the prosecutrix. As the witness, acting under the advice of defendant’s counsel, declined to testify, there was no testimony offered, and the question whether the testimony, if offered, would have been admissible is an abstract one, which calls for no expression of opinion by this court.
[6] 6. Another bill shows that Dr. Glass testified that the prosecutrix gave him a letter, to be- delivered to her father, who was then in jail; that he showed the letter to John Andries and read it to Mr. and Mrs. Miller, and afterwards destroyed it; that Andries 'testified that he knew the handwriting to be that of the prosecutrix from having seen letters written by her to her brother; that defendant then offered Mr. and Mrs. Miller to prove—
“that in fact the said Glass did show to the said witnesses said letter and read said letter to them; this evidence being offered for the purpose of corroborating the statement, as to the contents of that letter, made by the witness Andries.”
The offer was objected to, on the grounds : (1) That it had not been shown that the letter exhibited to the Millers was the same as had been shown to Andries; (2) and that the Millers admitted that they knew of the contents of the letter exhibited to them only from hearing what Dr..Glass read. The objection was sustained, on the ground that the testimony sought to be introduced was hearsay. ’'We are of opinion that the ruling was correct. The Millers appear to have known nothing about the letter exhibited and read in their presence, save what they were told by Dr. Glass.
[7] 7. Another bill shows that, the defendant being on the stand, his counsel offered to prove by him that he had, some time before, come into possession of a letter which he knew to have been written by Peter Andries, and which revealed bad conditions between the writer and the prosecutrix; that, after he and his wife had read the letter, he carried it to his daughter (the prosecutrix), and told her to destroy it in his presence; and, the letter having been destroyed, it was sought to prove the contents, for the purpose of contradicting the testimony of the prosecutrix, to the effect that she had had no improper relations with any other man than her father, and “for the purpose of justifying the father in his course, already proven, in which he prohibited his daughter to associate with those people.” The testimony was objected to, on the ground:
• “That this evidence is res inter alios acta, does not form part of the res gestee, and is an attempt to prove previous guilty acts of the female, which is, in law, no justification of the acts of the defendant.”
And the objection was sustained.
Another bill shows more specifically that the letter last above referred to was destroyed by the prosecutrix under the instructions of her father, and in his presence, and that *771 his counsel then offered to prove by him the contents of the letter—
“for the purpose of showing that improper relations existed between his daughter and other men, as well as for the purpose of contradicting the evidence of Jessie Swindall, when she stated that she had had no improper relations with other men.”
The district attorney objected to the offer, on the grounds:
“That the evidence of this letter is res inter alios acta, and that it was not competent for the defendant to show by this letter, or by any kind of evidence, the previous guilty acts of the female, which, in law, do not justify the acts of the defendant; and that, in so far as the evidence is offered to contradict the witness, no foundation has been laid, and that the evidence would not be admissible for the purpose of impeachment, because that would be doing indirectly what the law does not permit to be done directly; and for the further reason that it has not been shown by legal evidence that the proper foundation has been laid that Peter Andries wrote this letter.”
The objection was sustained, for the reasons (assigned by the judge):
“That the contents of the letter is between other parties, and would be hearsay, and, besides, it cannot be introduced as justification for the accused.”
The ruling was clearly correct, since testimony as to what Andries had written to a third person was no more admissible than testimony as to what he may have said; and we find nothing to suggest that the possible relations between the prosecutrix and other men were material to the question whether the defendant was guilty of the crime charged. We are, however, of opinion that defendant would have had the right, by competent evidence, to have contradicted the statements, concerning her relations with other men, which were made by the prosecutrix in her answers to the examination in chief; the rule which exempts her from contradiction with regard to collateral facts being limited to facts elicited on cross-examination. Beyond that, we are not to be understood as holding that evidence of the relations of the prosecutrix with other men than the defendant, in a case such as this, is always and necessarily, immaterial or collateral to the main issue; for, if, in such case, the prosecution -were relying on the physical condition of the prosecuting witness to establish the guilt of the accused, it would be relevant and material to show that she had relations with other men; and hence that some other man might be responsible for her condition.
“When a witness is cross-examined on a matter collateral to the issue, his answer cannot be subsequently contradicted by the party putting the question. The test whether a fact inquired of on cross-examination is collateral is this: Would the party be entitled to prove it as part of his case, tending to establish his plea? This limitation, however, only applies to answers on cross-examination; it does not affect the answers to the examination in chief.” Wharton’s Cr. Ev. (9th Ed.) § 484.
In a ease decided by this court, it was held that:
“To prove previous guilty acts of the female with other men is no defense in an incest case.”
But the court found that the bill of exception which presented the question merely recited that defendant offered to prove acts of sexual intercourse between the prosecuting witness and other men than the defendant: and, referring to the contention in the brief of defendant’s counsel that the excluded testimony was wanted to repel or destroy the corroboration, arising from the pregnancy of the prosecuting witness, of the charge of incest against her father, the court said:
“All the grounds relied on for the admission of the evidence should have been presented to the trial judge, and his ruling had thereon. On the only ground presented to him, as shown by the bill and the written statement made part of it, he ruled correctly in excluding the evidence, even admitting, for the sake of the argument, that it might have been admitted on the ground last presented, if timely urged.” State v. De Hart, 109 La. 579, 33 South. 608.
[8, 9] 8. We find another bill which recites that counsel for defendant read to the jury an extract from a text-book, to the effect that the jury should not convict the accused *773 on the uncorroborated testimony of his daugh-' ter, with whom he is charged with the incest for which he is prosecuted; that the judge, by way of answer to the argument, charged the jury that Jessie Swindall could not consent t© cohabit with her father, or any one else, and read to the jury the “age of consent” law, which was objected to as inapplicable to the case. The statement per curiam is as follows:
“The court made the above charge for the following reasons: I have the notes from which I made [read] in giving my charge to the jury, and I copy them here.
“In cases of incest, the jury cannot convict on the uncorroborated evidence of the accomplice, but it is safer, in such cases, that the evidence of the accomplice should be corroborated before the jury convicts. Corroboration is the proof of such facts as go to establish the statement of the accomplice as to opportunity, time, place, and circumstances, and the power and control of the accused over the accomplice. I read the exact language of the Supreme Court, in the case of State v. De Hart, 109 La. 579, 580 [33 South. 608], which is as follows: ‘It is questionable, indeed, if the daughter is to be deemed an accomplice, especially since she submitted, or was made to submit, at the early age of 12 or 13 years, to the lascivious embraces of her unnatural parent’ — and I charged the jury that they were the judges of the age, which had been proven, of this girl, and if she was under the age of consent I then made [read] the following sentence of the court’s opinion: ‘But, if viewed as an accomplice, his evidence was admissible, and on it alone the jury could convict.’ ”
The crime of incest is committed when two persons, who are related to each other within certain degrees of consanguinity, knowingly intermarry, or cohabit with each other without marriage (Act 78 of 1884), meaning, necessarily, voluntary cohabitation or sexual intercourse; for certainly no woman who may have been forced into sexual intercourse with a man within the prohibited degrees could be convicted of any crime by reason of such misfortune. Whether, however, the woman consents or does not consent, if she has sexual intercourse with a man who is related to her within the degrees specified, the man, at all events, is guilty of incest, and, if the cohabitation be against her will, is guilty also of rape. As was said in a case decided by this court a few years ago:
“The aim of the statute is to prevent the unnatural sexual intercourse, and this intercourse exists, none the less, if accomplished against the will of one of the parties; and the act is none the less incest because it happens also to be rape.” State v. Freddy, 117 La. 126, 41 South. 438, 116 Am. St. Rep. 195.
If the man who commits the crime of incest commits at the same time, the crime of rape, his offense is aggravated. On the other hand, if he has carnal knowledge of a girl who is at once within the prohibited degrees of relationship and under the age of consent, it is proper for the court to instruct the jury that her consent could not affect the issue, first, because neither woman nor girl can make incest any the less a crime by her consent; and, second, because, if she should be found to be under the age required by law, she was incapable of consenting to sexual intercourse with any one. The charge that corroboration of an accomplice is desirable, but not indispensable, to conviction is also correct. Marr’s Cr. Jur. p. 720; State v. Firmaturo, 121 La. 683, 46 South. 691.
[10] 9. Still another bill shows that the judge charged the jury:
“That flight was an evidence of guilt; that it was to be so considered by the jury, but they could also consider the prisoner’s explanation of it;. that counsel objected on the ground ‘that the law does not consider mere flight as an evidence of guilt which would authorize conviction, unless explained by the accused; that said charge worked an injury by eliminating all other evidence than that of the accused as to where he was when arrested, and how he came to be in Texas when arrested’; and that the objection was overruled, for the reason assigned by the court, as follows:
“ ‘When the objection was made by counsel, I immediately changed the charge to the jury, and instructed them that flight was to be considered as a consciousness of guilt, and to disregard what I had already charged them on the subject.’ ”
“Under the humaner spirit of modern law [this court has said], the weight attributed by the old common law to flight from justice, as a presumption of conscious guilt, has now greatly diminished. It is now merely regarded *775 as a circumstance which, ‘though by no means strong enough, by itself, to warrant a conviction, yet may become one of a series of circumstances from which guilt may be inferred.’ Wharton’s Cr. Ev. § 750.” State v. Moncla, 39 La. Ann. 871, 2 South. 816. See, also, State v. Baptiste, 105 La. 663, 30 South. 147.
The charge complained of, even in its corrected form, was therefore objectionable, though, as the defendant was afforded opportunity to explain, it is not likely to have operated to his prejudice. Because of the other errors which have been noted, however, and which could not have failed to prejudice his case, the verdict and sentence should be set aside.
It is therefore ordered, adjudged, and decreed that the verdict and sentence appealed from be set aside and annulled, and this case remanded to the district court, to be there proceeded with according to law.