It is therefore ordered that the verdict and sentence below be affirmed.

---

(58 South. 558.)

No. 19,142.

STATE v. CUNNINGHAM et al.

(April 22, 1912. Rehearing Denied May 20, 1912.)

*(Syllabus by the Court.)*

1. CRIMINAL LAW (§ 1169*)—HARMLESS ERROR—EVIDENCE.

A conviction and sentence in a criminal prosecution by a judge sitting without a jury will not be set aside, because, in order to relieve the state of the imputation of negligence, the prosecuting officer is permitted to show that witnesses had been brought in other cases from the home in another state of the principal witness for the state in order to sustain his general reputation in the community in which he lived for veracity; no effort having been made to show what such witnesses would have testified to if they had been held for the case on trial and put on the stand, and there being nothing to warrant the belief that the trial judge indulged in any assumptions in that respect.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 754, 3088, 3130, 3137–3143; Dec. Dig. § 1169.*]

2. WITNESSES (§ 361*)—REPUTATION FOR VERACITY.

Though ordinarily one who lives in the same community with another may be in a better position to know the general reputation for veracity of such other in such community, it does not follow that one not living in such community may not be better informed than many of those who live there. The qualification of the witness depends, not upon his place of residence, but upon the means and extent of his information.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1167–1175; Dec. Dig. § 361.*]

3. INTOXICATING LIQUORS (§ 148*)—OFFENSES—PERSONS LIABLE—WHOLESALE DEALER—"RETAIL."

Where a person assuming to do business as a wholesale liquor dealer in a prohibition parish sells to another who assumes to be doing a retail liquor business in such parish, the transaction is a sale at retail and subjects the wholesaler to the penalty for selling at retail without having previously obtained a license; there being no such thing, within the meaning of the law, as a dealer for resale in a parish where the sale of liquor at retail is prohibited.

[Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 148.*

For other definitions, see Words and Phrases, vol. 7, pp. 6193–6194; vol. 8, p. 7789.]

4. STATUTES (§§ 107, 141, 114*) — SUBJECTS AND TITLES—AMENDMENT—REPUBLICATION OF AMENDED STATUTE.

Act No. 51 of 1906 is not obnoxious to article 31 of the Constitution as having two objects or as failing to express its object in its title, nor is it obnoxious to article 32 of the Constitution as attempting to amend and re-enact laws and ordinances without re-enacting and publishing them at length. It is a piece of independent legislation which repeals all prior legislation with which it conflicts.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 121–134, 48, 198, 209, 145, 147–149; Dec. Dig. §§ 107, 141, 114.*]

Breaux, C. J., and Provosty, J., dissenting.

Appeal from First Judicial District Court, Parish of Caddo; T. F. Bell, Judge.

J. F. Cunningham and another were con-

victed of unlawful sale of intoxicating liquors, and appeal. Affirmed.

Alexander & Wilkinson, for appellants. Walter Guion, Atty. Gen., and J. M. Foster, Dist. Atty. (G. A. Gondran, of counsel), for the State.

MONROE, J. It was charged against the defendants, J. F. Cunningham and E. Bitters, that on August 9, 1911, they "unlawfully did keep a grog and tippling shop, and did retail spirituous and intoxicating liquors, to wit, beer and whisky, without previously obtaining a license from the police jury of Caddo parish or the municipal authorities of the city of Shreveport." And, a similar offense having been charged in a separate proceeding as committed on August 15, 1911, the two prosecutions, involving as they do the same issues of fact and law, were consolidated. After issue joined and trial, defendants were convicted and sentenced for the one offense to pay each a fine of $350 and to serve 90 days on the public roads, and 90 days additional in default of payment of the fines, and for the other offense to pay each a fine of $100 and costs, and in default of payment of the fines to serve 30 days on the public roads. From the sentence first mentioned, they prosecute this appeal and present their case by means of certain bills of exception which will be considered, seriatim, to wit:

[1] Bill No. 1. That after defendants had examined several witnesses introduced for the purpose of impeaching the character for veracity of Warren, the principal witness for the state, the state called Daniels, a policeman, and S. C. Fullilove, commissioner of public safety, who were allowed to testify:

"That the state had had several witnesses summoned and brought from the former home of said witness Warren for the purpose of sustaining his reputation for truth and veracity, and had kept said witnesses here for several days for said purpose, to which evidence counsel for the defendants objected on the ground that it was irrelevant and that it was not permissible to sustain the character for truth and veracity of said witness Warren by such species of evidence. * * * And, further, the witness Daniels, who testified that he had not lived in the neighborhood where said witness Warren resided for over 10 years, but had heard the character and reputation of said Warren discussed by persons from said neighborhood, was permitted * * * to testify that the character of said Warren for truth and veracity was good in said neighborhood" —to which ruling defendants objected and reserved their bill.

The statement per curiam is:

"That the testimony of Daniels and Fullilove, to the effect that the state had had witnesses present at one time for the purpose of sustaining the credibility of state's witness Warren, was admitted, for what it was worth, to negative the effect that no effort was made to counteract the testimony of the witness, introduced by the defendant, to impeach the testimony of the witness Warren, and that the objection of the defendant went simply to the effect of the testimony objected to and not to its admissibility, and that the testimony of the witness Daniels as to his knowledge of the witness Warren and his reputation for truth and veracity went to the worth of the testimony and not to its admissibility."

[2] It does not appear that Daniels or Fullilove offered or were asked to say what testimony the witnesses whom the state had brought from Warren's home would have given if they had been held and put on the stand, and we can discover no prejudice to any rights of the defendants in the making known to the judge, sitting without a jury and admitting the testimony only for that purpose, the fact that the state had secured the presence of such witnesses, but for reasons which may or may not have been given had allowed them to return to their homes. Such knowledge may have served to acquit the state of laches, but it could have had no effect in determining the question of the credibility of Warren, in support of whose general reputation in that respect the witnesses were said to have been summoned. As to the testimony of Daniels upon that subject, his qualification as a witness depended, not upon his residence in the community in which Warren lived, but upon his

knowledge of Warren's general reputation for truth and veracity in that community, and though such knowledge is ordinarily more likely to be acquired by one who himself lives in the community, nevertheless one not so living may keep himself better informed than many of the residents. We therefore find no reversible error in the ruling complained of.

[3] Bill No. 2. That Warren to whom the beer in question is said to have been sold was authorized by the authorities of the city of Shreveport to open and conduct a retail liquor shop for the purpose of obtaining evidence of the sale of liquor by others, and, having obtained an internal revenue license from the United States, was a retail dealer within the intendment of the law; that a sale to him of beer by the manufacturer in the original unbroken package of more than five gallons was therefore a sale at wholesale, and not at retail; the wholesale dealer in such case not being concerned with the inquiry whether the purchaser buys for resale or not, and not being considered a retail dealer because such purchaser may not have obtained a retailer's license.

"That, as to the defendant Cunningham, the indictment and bill of particulars having charged that the sale alleged to have been made by him was so made by him in person, he cannot be convicted on proof that it was made by another as his or his company's employé or agent, * * * and evidence that he made a sale by or through another as agent or employé is not admissible, under the charge against him, except as disproving that he made the sale as alleged in person."

It appears from the statement per curiam that Caddo is a parish in which, as a result of a vote of the people, the sale of intoxicating liquor is prohibited agreeably to the provisions of Act No. 221 of 1902, amending and re-enacting sections 1211 and 2778 of the Revised Statutes, and authorizing the police juries and municipal authorities "to make such rules and regulations for the sale or the prohibition of the sale of in-toxicating liquors as they may deem advisable, and to grant or withhold licenses from drinking houses and shops * * * as a majority of the legal voters may determine by ballot."

This act is supplemented by act 66 of 1902, p. 93, amending and re-enacting section 910, R. S., and providing that:

"Whoever shall keep a grog or tippling shop, or retail spirituous or intoxicating liquors without previously obtaining a license, * * * on conviction shall be fined not less than $100 nor more than $500, and, in default of payment of fine and costs, shall be imprisoned for a term within the discretion of the court, or shall suffer fine and imprisonment as the court may deem proper. * * *"

And the legislation thus referred to is further supplemented by act No. 46 of 1906, p. 61, which provides:

"That it shall be unlawful for any person, within the limits of any village, town, city, ward, or parish of this state, in which the re-tailing of spirituous or intoxicating liquors is prohibited, to seek, solicit, or receive orders from any one for the purchase of spirituous or intoxicating liquors." And there is a penalty of fine or imprisonment, or both, imposed for violation of the prohibition.

And finally we have act No. 176 of 1908, p. 236 (known as the "Gay-Shattuck Law"), which is, "An act"—

"to regulate and license the business of con-ducting a barroom, cabaret, coffee house, café, beer saloon, liquor exchange, drinking saloon, grog shop, beer house, beer garden, or other place where alcoholic, spirituous, vinous and malt liquors, or intoxicating beverages, bitters or medicinal preparations, of any kind, are sold, directly or indirectly, in quantities of less than five gallons, and to provide penalties for violations of this act; to limit the effect and operation of this act to cities, towns, villages and parishes * * * where the sale of liquors is permitted; to prevent this act from affecting, modifying, amending or repealing any local option laws; or from interfering with or preventing the exercise of local option on the liquor traffic," etc. (the balance of the title being omitted.)

The first section of the act (last above mentioned) provides that, for every business of conducting a barroom, cabaret, etc. (following the title), in which intoxicating

liquors are sold in less quantities than five gallons, the license shall be based on the annual gross receipts, and the business is then divided into classes and the license fixed upon each class in proportion to the receipts; the maximum license being $1,600, and the minimum $200, to which is added a proviso which need not be here quoted. Section 2 provides that the police juries and municipal authorities shall require licenses in such cases of not less than $500. Section 3 prohibits the conducting of the businesses mentioned under penalty of a fine of not less than $100 nor more than $500, or imprisonment in the parish jail or parish prison for a term not exceeding two years, or both such fine and imprisonment.

Section 14 provides:

"That this act shall only apply to cities, towns, villages and parishes where the sale of liquors is permitted, and nothing in this act shall be construed to affect, modify, amend or repeal any local option laws or to interfere with or prevent the exercise of local option on the liquor traffic, and that nothing in this act shall be construed, in any way or manner, as affecting, amending, modifying or repealing any existing special or local act or acts prohibiting or restricting the sale of liquor from or within any locality or localities in this state."

Section 15 provides:

"That, subject to the limitations contained in section 14 of this act, all laws and parts of laws contrary to, or inconsistent with, this act be and the same are hereby repealed."

It is quite evident from the excerpts thus given from the title and context of Act 176 of 1908 that its purpose is to authorize the licensing and provide for the regulation of the business of selling intoxicating liquors in less quantities than five gallons in places where such sales are not prohibited under the local option laws, and it is equally evident that the lawmakers did not deem it advisable to complicate a statute enacted for the regulation of the sale of intoxicating liquors with the existing laws providing for the prohibition of such sales in particular communities. How such prohibition is to be enforced is therefore to be ascertained from other legislation.

The act of 1902 (No. 66, p. 93), as we have seen, imposes a penalty for the retailing of spirituous or intoxicating liquors without previously obtaining a license. Act No. 221 of 1902, p. 451, as we have seen, authorizes police juries and municipal governments to "grant or withhold all licenses for the sale of intoxicating liquors within their parishes as a majority of the legal voters may determine by ballot."

There is no law which specifically prohibits the sale of intoxicating liquors at wholesale even in a prohibition parish, but the result is the same, since under the general license law (Act 171 of 1898, § 6, p. 394) it is:

"Provided, that no person or persons shall be deemed wholesale dealers, unless he or they sell by the original or unbroken package or barrel only, and provided, further, that no person or persons shall be deemed wholesale dealers unless he or they sell to dealers for resale. If they sell in less quantities than original and unbroken packages or barrels, they shall be considered retail dealers and pay licenses as such. * * * " Page 395. "Provided, that if any distilled, vinous, malt, or other kind of mixed liquors be sold in connection with the business of retail merchant, grocer, oyster house, confectionery, or *in less quantities than five gallons*, the license for such additional business shall be as hereinafter provided in section 13 of this act," etc. (italics ours).

The licenses for wholesale dealers having been fixed by section 6, and the proviso first above quoted from that section having furnished definitions of wholesale and retail dealers, the effect of the proviso last quoted is to add to the class of retail dealers those who sell "in less quantities than five gallons," whether they sell in original or unbroken packages or barrels or otherwise, and section 910, R. S. (as amended and re-enacted by Act 66 of 1902), applies to all persons who retail intoxicating liquors without previously obtaining licenses, whether the sales be made in prohibition territory or elsewhere. Act 46 of 1906, p. 61, applies in terms to

places where the sale of intoxicating liquors at retail is prohibited, but it is confined in its application to the seeking, soliciting, or receiving of orders for such liquors, and is probably intended to reach the case of the liquor dealer in prohibition territory whose agent or traveling salesmen seek and receive such orders elsewhere and transmit them to him for execution. The act may therefore be given its own effect without interfering with the operation of section 910 of the Revised Statutes as amended. In the instant case, it is undisputed that the defendants made the sale charged as an offense in a quantity exceeding five gallons and in the original or unbroken package, but, in order to escape the penalty for selling at retail without a license, they must have made such sale to a dealer for resale, and that they did not do, for the person to whom they sold was an illicit vender, engaged in retailing intoxicating liquor in Caddo parish in violation of a prohibitory law, and hence was not, within the intendment of the law, a "dealer for resale." The transaction therefore falls within the rulings heretofore made by this court to the effect that:

"Under the general license act (No. 171 of 1898, p. 387), no person is deemed a wholesale dealer unless he sells to dealers for resale. Hence a dealer in intoxicating liquors who sells to individuals for consumption is a retailer and may properly be convicted as such in a prohibition parish." State v. Spence, 127 La. 336, 53 South. 596.

"As there can be no lawful retailer of intoxicating liquors in a prohibition parish, local sales by a wholesale dealer to illicit venders of liquor will be treated as unlawful sales to individuals." State v. Pomeranky, 57 South. 994, ante, p. 339. See, also, State v. Foster, 57 South. 895, ante, p. 219; State v. Monsour, 58 South. 144, ante, p. 450.

The trial judge has found as fact that the sales charged against defendants were made by them in person.

Bill No. 3 was reserved to the overruling of a motion for new trial, in which the matters presented by the two bills just considered were relied on.

[4] Bill No. 4 was reserved to the sentence condemning defendants in addition to the payment of fines to work on the public roads; the ground of objection being that said sentence is based on Act No. 51 of 1906, and that said act contravenes article 31 of the Constitution in that "it contains two distinct objects, and that its object is not expressed in its title," and that it contravenes article 32 of the Constitution in "that it attempts to amend all the criminal statutes of the state and all the municipal ordinances of the various municipalities of the state without re-enacting and publishing at length the said statutes or ordinances intended to be amended."

Defendants are prosecuted under Act No. 66 of 1902 which amends and re-enacts section 910, R. S., denounces the offense with which they are charged, and imposes as the penalty therefor a fine of not less than $100 nor more than $500, and imprisonment in default of payment of the fine within the discretion of the court (elsewhere limited to two years), or fine and imprisonment, as the court may deem proper. Act No. 46 of 1902 provides that (save in the parish of Orleans) any person sentenced to imprisonment in the parish jail, or to fine and imprisonment, or to imprisonment in default of payment of fine, may, at the discretion of the court, be set to work on the roads, levees, or other public works of the parish, or may be hired out or leased for work in the parish, during the term for which he may be sentenced to imprisonment:

"Provided, that convicts sentenced to imprisonment alone, or to imprisonment and fine, shall not be hired out except for the fine, but, for the term of their imprisonment, shall be worked on public works only under public officials; and, further, provided, that no convict shall ever be hired out for a less sum than the aggregate of their fine, costs of court and fees of officers."

Act No. 51, of 1906, p. 85, is entitled and reads as follows:

"An act to provide that in all criminal prosecutions, sentences to imprisonment, or to imprisonment without qualification, and all sentences for the violations of ordinances, shall mean imprisonment with labor; regulate the employment of such prisoners; and to repeal all laws in conflict herewith."

"Section 1. * * * That, in all criminal prosecution where any person is sentenced to imprisonment, or to imprisonment in default of the payment of the fine imposed, whether in the parish jail or without qualification as to the nature of such imprisonment, or where any person is sentenced to imprisonment in default of the payment of the fine imposed, for the violation of any valid ordinance of any of the political subdivisions of the state, such imprisonment shall mean imprisonment with labor; and every person so sentenced, if not put to work under the provisions of Act No. 29 of 1894, as amended by Act No. 46 of 1902, shall be required to work on the public roads, streets, or levees, of the parish or municipality responsible for the costs of the prosecution of such person or within the walls of the jail, under such rules and regulations as shall be prescribed by the police jury or city council of such parish or municipality."

"Sec. 2. * * * That all law or parts of laws in conflict herewith be and the same are repealed; provided, that this act shall not apply to persons committing offenses prior to the adoption hereof, but all such persons shall be sentenced in accordance with existing laws."

The single object of the act as expressed in the title is to provide that all sentences to imprisonment, whether with fine or in default of payment of fine, and whether under state law or municipal or parish ordinance, unless otherwise qualified (as, for instance, by the addition of the words "at hard labor," which would mean in the penitentiary), shall mean imprisonment with labor, and the additional language of the title ("regulate the employment of such prisoners, and to repeal all laws in conflict herewith") merely indicates the purpose to prescribe the manner in which that object is to be accomplished and to remove obstacles in the way of conflicting laws. And nothing more is attempted in the body of the act. The title and text are therefore within the rule that:

"Whatever is germane or incidental to the purpose expressed is embraced within it; hence an act has not more than one object by reason of its containing provisions for the carrying out of that object, nor is it necessary to set out in the title the means by which the purpose of the act is to be accomplished." Marr's Cr. Jur. § 3, p. 7.

The act does not purport to revive or amend any statute, but is a piece of independent legislation which in terms and according to the accepted canons of construction repeals all prior legislation with which it conflicts. Dehon v. Lafourche Basin Levee Board, 110 La. 767, 34 South. 770; State v. De Hart, 109 La. 574, 575, 33 South. 605; Cyc. vol. 36, pp. 1071, 1073, 1081.

There are some other matters discussed in the brief filed on behalf of defendants, but they are not covered by the bills of exception, do not appear to have been presented in the trial court, and need not be here considered.

Finding no reversible error therein, the convictions and sentences appealed from are affirmed.

BREAUX, C. J., dissents.

See dissenting opinion of PROVOSTY, J., 58 South. 561.