McBRIDE, Judge.
The three members of the City Civil Service Commission of the City of New *635 Orleans prosecute this suit for a declaratory judgment, under the provisions of Act No. 22 of 1948, Ex. Sess., now LSA-RS 13:4231, to fix the status of Robert E. Murphy, on« •of the classified clerical employees of the ■defendant, Sewerage & Water Board of New Orleans, who, it is charged, is illegally 'holding his position. Both Murphy and the Board are impleaded as defendants. By or•der of court, George Reyer was substituted as a party plaintiff in lieu of Joseph W. Montgomery, whom he succeeded as a member of the Civil Service Commission.
None of the facts of the case are disputed. Robert E. Murphy successfully' passed the examination for Clerk I, and the ■Civil Service Commission of New Orleans -placed his name seventy-first (last) on a list ■of eligibles. Subsequently the eligible list was certified to the Sewerage & Water Board of New Orleans, and on June 19, 1950, the Board appointed Murphy to the ■position of Clerk I in the purchasing department.
The appointment has never been approved by the City Civil Service Director, who maintains that Murphy was appointed in violation of Act No. 171 of 1940, as amended, LSA-RS 33 ¡2391-2433, and the rules and regulations adopted by the Civil Service Commission pursuant thereto, in that he was not among the first three named on the eligible list. Nevertheless, Murphy has remained on the payroll of the Sewerage & Water Board of New Orleans since his appointment, and plaintiffs by means of this suit seek a judicial definition of his status.
The Sewerage & Water Board of New Orleans was created by Act No. 6 of 1899, Ex.Sess., LSA-RS 33 ¡4071^1091, which was ratified by an amendment to the Constitution of 1898. In Sec. 35, the General Assembly reserved the right and power to amend the act, except in certain respects, and counsel contends that any amendment to Act No. 6 of 1899, Ex.Sess., must be by¡ direct act reciting specifically that its purpose is to amend the act creating the Sewerage & Water Board of New Orleans. Counsel adopts the position that if Act No'. 171 of 1940, the City Civil Service Act, affects the Sewerage & Water Board of New Orleans, it is unconstitutional in that respect, for the reason that it is an .independent statute and does not constitute a direct amendment to Act No. 6 of 1899, Ex.Sess.
It is further contended on behalf of defendants that the only civil service law applicable to the Sewerage & Water Board of New Orleans is that contained in Sec. 13 of Act No. 6 of 1899, Ex.Sess., as amended, LSA-RS 33 ¡4076; that said section imposes upon the Sewerage & Water Board the duty to appoint employees “only after they have passed the civil service examination administered by the Civil Service Commissioners of the City of New Orleans”; that as a matter of fact Robert E. Murphy successfully passed the civil service examination conducted by the Civil Service Commission of the City of New Orleans, and his name was carried on the eligible list prepared by the Civil Service Commission for the position of Clerk I, and accordingly the Sewerage & Water Board of New Orleans had the unqualified right to choose Murphy’s name from the eligible list, regardless of its position thereon, for employment by the Board.
The trial below resulted in a judgment declaring that the Sewerage & Water Board of New Orleans was subject to and bound by the provisions of Act No. 171 of 1940, as amended, and to the rules and regulations of the Civil Service Commission of the City of New Orleans, and that the position now occupied by Robert E. Murphy, that is, Clerk I in the purchasing department of the Sewerage & Water Board of New Orleans, is legally vacant, and that the status of Murphy is that he is not legally holding said position. The defendants have appealed.
It is first necessary to consider the history and development of civil service, insofar as it affects the Sewerage & Water Board of New Orleans, LSA-RS 33 ¡4076, the source of which is Sec. 13, Act No-. 6 of 1899, Ex.Sess., which created the Sewerage & Water Board of New Orleans, provides : “The board may employ all necessary clerks, engineers, firemen, and other skilled and unskilled employees necessary and proper to the efficient administration, operation and control of the public sewerage, water, and drainage systems. All the *636 employees, except unskilled laborers, shall be appointed only after they have passed the civil service examination administered by the Civil Service Commissioners of the City of New Orleans. They shall hold their positions during good behavior and shall be removed only for cause and after hearing by the civil service commission. The general superintendent shall have authority to suspend an employee for cause until trial before the commission. Nothing herein shall be construed as preventing the board from dispensing with the services of unnecessary employees. Civil service rules shall not apply to the secretary, the general superintendent, or to the board of advisory engineers. * * * ”
At the time of the enactment of the 1899 statute, there was in effect Act No. 45 of 1896, charter of the City of New Orleans, which provided in Sec. 38 et seq. for a Board of Civil Service Commissioners empowered to make rules for examinations, appointments and removals, with the right to amend same from time to time. Subsequently, Act No. 89 of 1900 made its advent. This act provided for a civil service system for the City of New Orleans and repealed all acts inconsistent therewith, and specifically Secs. 38 to '67 of Act No. 45 of 1896. Act No. 89 of 1900, in Sec. 7, required the Board of Civil Service Commissioners to prepare a register for each grade or class of positions in the classified service of the City of New Orleans, of the persons whose general average standing when examined for such grade or class was not less than seventy (70) per cent, and who were otherwise eligible, and such persons were to take rank upon the register as candidates. Section 10 of the act authorized the Board to make rules for promotions in the classified service. Act No: 89 of 1900 was repealed by Act No. 14 of the Third Extra Session of 1935.
So, therefore, after 1935 there was no' civil service system in the City of New Orleans, until the Legislature of 1940, by Act No. 171, LSA-RS 33:2391-2433, established the prevailing comprehensive system of civil service in all cities in the State of Louisiana having a population exceeding one hundred thousand according to the last preceding decennial census of the United States, which, of course, includes the City of New Orleans.
Counsel have dedicated much of their argument, both oral and in brief, to the proposition whether the Sewerage & Water Board of New Orleans is included within the purview of LSA-RS 33 :2393, Act No. 171 of 1940, Sec. 3, which reads as follows : “ 'City service’ or ‘civil service of the city’ means all offices and positions of trust or employment of the city, any department, agency, board or commission thereof, or corporation organized for public purposes, of which fifty per cent, or more of the stock is owned or controlled by the city, * *
We do not think it at all necessary to resolve the controverted question. It is immaterial whether the terms used in Sec. 3 of Act No. 171 of 1940, “any department, agency, board or commission thereof, or corporation organized for public purposes, of which fifty per cent, or more of the stock is owned or controlled by the city,” are broad enough to embrace the Sewerage & Water Board of New Orleans.
Section 13, Act No. 6 of 1899, Ex.Sess., has a long history. It was amended by Act No. 111 of 1902, Act No. 101 of 1942, Act No. 15 of 1944, Act No. 489 of 1948, and by LSA-RS 33:4076. Notwithstanding the amendments, the language originally contained in Sec. 13 was not changed in any material respect, and the purpose of the amendments was merely to supply additional provisions to the section, with which we are not concerned in this case and which we might say do not add to or detract from the language contained in the section as it was originally written. Therefore, the first amendment to the section in 1902 occurred when Act No. 89 of 1900, which provided for a civil service system for the City of New Orleans, was in effect. It undoubtedly was the intention of the General Assembly of 1902 to make the Sewerage & Water Board of New Orleans amenable and subject to the civil service rules prevailing in the City of New Orleans as established by Act No. 89 of 1900, otherwise it would have unequivocally said so.
The same trend of reasoning can be applied to the later amendments to Sec. 13,. *637 namely, Act No. 101 of 1942, Act No. 15 of 1944, Act No. 489 of 1948, and LSA-RS 33:4076. All of these amendments were subsequent to the enactment of Act No. 171 of 1940, and if the Legislature did not intend that the Sewerage & Water Board of New Orleans should be controlled by the City Civil Service Law, Act No. 171 of 1940, it would have said so.
Counsel for defendants argues that if the court is to write into Sec. 13 of the act creating the Sewerage & Water Board, as amended in 1942, 1944, 1948, and by the Revised Statutes of 1950, all of the provisions of Act No. 171 of 1940, as amended, together with all the rules and regulations adopted by the City Civil Service Commission, it would strike Sec. 13 with unconstitutionality, in view of art. 3, Sec. 18 of the Constitution of 1921, which provides- that the Legislature shall never adopt any system or code of laws by general reference thereto-.
In providing by Sec. 13 that certain of its employees shall be appointed by the Sewerage & Water Board of New Orleans only after they had passed the civil service examination by the Civil Service Commission of the -City of New Orleans, and that civil service rules shall not apply to certain other employees, the lawmakers did not attempt to adopt a system -or code of laws by general reference thereto. What the several Legislatures did was to place certain employees of the Sewerage & Water Board on a parity with the municipal employees of New Orleans, by referring to and adopting for their benefit the procedures contained in the prevailing statutes controlling civil service in New Orleans-. There is abundant authority to the effect that this class of legislation is not reprobated by the constitutional provision cited by counsel.
In State v. De Hart, 109 La. 570, 33 So. 605, 607, the defendant was charged with incest by cohabiting with a person related to him within the degrees of consanguinity within which marriage is prohibited by arts. 94 and 95 of the Civil Code of Louisiana. The defendant contended that the act so defining incest contravened the provisions of the Constitution of 1879, in that the General Assembly was prohibited therein from adopting any system or code of laws by general reference to such system or code. The Supreme Court said:
“We are inclined to- think that the words ‘any system or code of laws/ as used in the article, means systems or codes of laws other than our own — systems or law, codes of law in vogue in other countries and jurisdictions ; that these are not to be adopted by merely a general reference to- the same, but that such systems or codes, or the several provisions of the same, wanted to be adopted or enacted here, are to be recited at length in the adopting act.
******
“But if it be true that article 31 (33 of the present Constitution) applies as well to our own laws or statutes as to the systems or codes o-f laws of other countries, we must still hold it is not infringed by the act of 1884.
“The General Assembly in enacting the statute of 1884 did not ‘adopt’ a ‘system or code of laws by general reference to such system or code of laws/ within the meaning of the constitutional provision. The statute makes, merely, a particular reference to two articles of the Civil Code, a system of laws long since adopted in Louisiana, and this in aid only of its purpose to define accurately the crime of incest which the act denounces and punishes.”
The same principle was involved in Campagna v. City of Baton Rouge et al., 165 La. 974, 116 So. 403. There it was contended that the act under consideration which authorized the governing authorities to advertise for bids for installing and constructing the contemplated work “in the same manner now provided by law for the letting of public contracts,” and to accept any bid and enter into- a contract for such installation “in the manner now provided by law,” contravened the provisions of art. 3, Sec. 18, of the Constitution of 1921. The Court said: “Section 18 o-f article 3 of the Constitution prohibits the Legislature from adopting any system or code of laws by general reference. Section 5 of the statute, by providing for bids and contracts to be let and entered into ‘in the * * * manner now provided by law/ in no way adopts a system or -code of law, but, as said above, *638 refers to and adopts the procedure contained in statutes on the same subject-matter and originating from the same source; i. e., the Legislature of the state. In this connection, see State v. De Hart, 109 La. 570, at page 575, 33 So. 605. * *
On several occasions our -Supreme Court has held that acts were not violative of art. 3, Sec. 18, of the Constitution of 1921 in defining intoxicating liquors and offenses in connection therewith by reference to federal legislation. State v. Copola, 157 La. 98; 102 So. 82, and cases therein cited. See also State v. Thompson, 161 La. 296, 108 So. 543.
A decision of this case is ultimately dependent upon the construction to be placed on Sec. 13 of Act No. 6 of 1899, Ex.Sess., as amended. The argument .is made that Sec. 13 is satisfied if candidates pass an examination before they are selected for employment, and that if only this is done the officials of the Sewerage & Water Board of New Orleans are at liberty to- select employees at random from the general eligibility list, regardless of their status or position thereon.
It is a cardinal principle of law that in seeking the meaning of and construing statutes the end in view is to determine the legislative intent, which is to be deduced from the whole and every part of the statute when taken together. .One clause or sentence should not be isolated and considered alone, while others are ignored. If only the sentence relied upon by counsel for defendants is to be considered, and the rest of Sec. 13 disregarded, violence would be done to the well settled rules of statutory construction. Section 13, so far as it concerns this court, applies to the one subject matter, that is, a system of civil service for the Sewerage & Water Board of New Orleans, and all of its provisions must be taken into consideration when its meaning and Import are sought.
This being so, we immediately focus our attention on this sentence contained in the section, “Civil service rules shall not apply to the secretary, the general superintendent, or to the board of advisory engineers.” There is no question in our minds that this negative has the force and effect of an affirmative. In providing that civil service rules shall not apply to the secretary, general superintendent, or to> the board of advisory engineers, the meaning is perfectly manifest that civil service rules shall apply to all other employees, except unskilled laborers. Therefore, if “civil service rules” are applicable, how can it be said that in the case- of new employment those rules are relaxed. There is no merit in the contention that Sec. 13 imposed only a limited civil service system upon the Sewerage & Water Board of New Orleans. Civil service would count for little if the appointing authority may shuffle the places on the eligibility list at will.
LSA-RS 33:2416, which was Sec. 24 of Act No. 171 of 1940, as amended, provides: “A. Whenever an appointing authority proposes to fill a vacancy in the classified service * * * he shall submit to the director a statement showing the position to-be filled, * * * and shall request the director to certify the names of persons eligible for appointment to such position. The director shall, * * * certify to< the appointing authority the names of three eli-gibles for such position * * *. The eli-gibles certified shall be * * * the highest ranking eligibles willing to accept employment, ranked in the following order: first, all the eligibles on the appropriate reemployment list, if any; secondly, those on a promotion list, if any; lastly, those on an employment list. * * * Names shall be certified from each list in the order of their rank on that list. * * * "
Two names appeared on the reemployment register, and two eligibles were shown on the promotional register. Murphy’s was the last name appearing on the employment register. It is- apparent that the officials of the Sewerage & Water Board of New Orleans did not adhere to-the provisions of the City Civil Service Law in the premises, and that the appointment of Murphy was illegal and contrary to emphatic statutory provisions.
. We perceive no- error in the judgment appealed from, and it is hereby affirmed.
Affirmed.