McBRIDE, Judge.
The Sewerage and Water Board of New Orleans has appealed from a judgment in plaintiffs favor for $3000, etc., representing damages allegedly sustained by her on the afternoon of January 6, 1962, while she was walking on the sidewalk in the 1500 block of Delery Street. Plaintiff filed an original and three amended and supplemental petitions alleging in substance that while so walking she stepped upon what she had reason to believe was a safe portion of the sidewalk, but that the same gave way under her weight, throwing her off balance and causing her to fall and suffer certain bodily injuries; that the condition of the sidewalk at the point of her fall constituted a trap; that the Sewerage and Water Board of New Orleans had removed a portion of the concrete on the sidewalk and excavated a trench in which pipes were laid and filled the trench with soft mud and sand of about the same color of the removed concrete, said mud or sand approximating the grade of said sidewalk so that the trap was indistinguishable; that the softness of the mud was the cause of the accident. She contends also- that defendant was negligent in leaving the sidewalk in a dangerous condition whereas it was in a safe condition before the work was done; that appellant was also negligent in not posting signs or maintaining barricades warning the public of the hazardous situation.
Appellant interposed several exceptions to the petitions in the trial court, all of which were overruled. It now reurges before us the exceptions of no cause of action and no right of action which are grounded on the theory that the Sewerage and Water Board, being an agency of the state, is immune from suit and liability in tort in that the work done on the sidewalk on which plaintiff fell was in the performance of a governmental function.
The exceptions were properly overruled by the trial judge in view of the 1960 amendment to Article III, Section 35 of the Constitution of 1921 which in part provides:
“The Legislature is empowered to waive, by special or general laws or resolutions, the immunity from suit and from liability of the state, and of parishes, municipalities, political subdivisions, public boards, institutions, departments, commissions, districts, corporations, agencies and authorities and other public or governmental bodies; and each authorization by the Legislature for suit against the State or other such public body, heretofore and hereafter enacted or granted, shall be construed to be and shall be effective and valid for all purposes, as of and from the date thereof, as a waiver of the defendant’s immunity both from suit and from liability.” (Italics ours).
The Sewerage and Water Board is an agency or subdivision of the state. State ex rel. Porterie v. Walmsley, 183 La. 139, 162 So. 826. As far back as Act No. 6 of the Extra Session of 1899 the Legislature endowed the Sewerage and Water Board with the power to expropriate any property convenient or necessary and proper to its public systems of sewerage and water. R.S. 33:4078, as amended by Act No. 262 of 1952 and Act No. 426 of 1956, clothed the Board with the power of expropriation in connection with any property convenient or necessary for the sewerage, water or drainage systems. In State ex rel. Saunders v. Kohnke, 109 La. 838, 33 So. 793, the Supreme Court held that such power granted by the Legislature carried with it the capacity to be sued. The Court used this terse language: “ * * * It [the Sewerage and Water Board] is empowered to institute expropriation proceedings, and therefore to sue and to be sued.”
*829 The Legislature has thus granted authority to appellant to sue and he sued which amounts to a full Legislative waiver of governmental immunity from suit and liability effective and valid for all purposes including litigation such as we have before us. Hamilton v. City of Shreveport, 247 La. 784, 174 So.2d 529; Walesch v. City of New Orleans, La.App., 195 So.2d 302; Binnings Const. Co. v. Sewerage Dist. No. 1, etc., La.App., 174 So.2d 183.
The Sewerage and Water Board answered plaintiff’s petitions in effect generally denying all of her allegations; in the alternative the charge is made that the proximate cause of the accident was plaintiff’s contributory negligence in several respects.
The only person who could testify as to how the accident happened was plaintiff herself. She summoned as a witness, Rev. Sidney Green, who failed to respond to the subpoena served upon him whereupon the Sewerage and Water Board summoned Green. Upon taking the stand as a defense witness, he professed he did not remember any of the pertinent details in connection with the accident; he admitted he assisted plaintiff after her fall. Green’s testimony is absolutely worthless and of no value whatsoever.
Notwithstanding that plaintiff’s several petitions and her testimony reveal some contradictions, the trial judge was of the opinion that she was telling the truth and that she did actually fall because of the earth in the trench giving way causing her to suffer certain injuries.
Appellant’s counsel argue that the confusion in municipal numbers casts doubt on plaintiff’s version of the accident. It was alleged in the original petition that the accident happened in front of 1507 Delery Street. Plaintiff’s first supplemental petition alleges the sidewalk in front of 1511 Delery Street is the locus in quo. The truth of the matter is that the accident happened on the sidewalk in front of a house under construction which then had no municipal number. Plaintiff at all times in her testimony maintained she stepped upon and sank into the soft mud of the trench which had been excavated by the Sewerage and Water Board the day before the accident. She plainly marked the spot where she fell on a photograph of the sidewalk introduced into evidence by the Sewerage and Water Board. An investigator for the Board admitted that shortly after the accident plaintiff correctly designated the situs of her fall as being in front of 1511 Delery Street. There is no question that the Sewerage and Water Board performed the work on the sidewalk in front of said premises.
The learned trial judge heard all of the evidence and resolved the factual issues in favor of plaintiff. He had the benefit of hearing and seeing plaintiff as she testified, and there is no reason why we should hold that the judge committed error as to his factual findings. He wrote such lucid and well prepared reasons for judgment that we deem it proper, as part of this opinion, to adopt such reasons which set forth the facts of the accident, the negligence of the defendant and the extent of her injuries. We quote the reasons thus:
“In the trial of this matter, the plaintiff, as well as several of the witnesses that were offered on behalf of plaintiff, all presented to the Court the type of witness who is uneducated and unfamiliar or, as put by one counsel, unsophisticated in Court proceedings and the Court and counsel had some difficulty in ascertaining the facts from the witnesses.
“However, all of this must be taken into account in evaluating the testimony as offered by these witnesses and the Court believes that the testimony of the plaintiff was truthful and as explicit as possible under the circumstances.
“The Court finds, as a matter of fact, that the plaintiff, Laura Warfield, did *830 step into a trench which had been dug and covered by the Sewerage and Water Board and as she stepped into the said trench, which was soft mud as a result either of mud used or the rain the night before, she sank and slipped, her feet giving way under her and she falling forward.
“It is true, as contended by counsel for the Sewerage and Water Board, that the plaintiff repeatedly used the word ‘slipped’, but under examination by the Court, it was evident that what she meant to convey was that her feet gave ’way underneath her as she stepped into this trench.
“The Court believes that it has been established that the Sewerage and Water Board was negligent in not giving proper warning to the public of the existence of the trench, in failing to provide any notice to the public, either by barricade, bridge or other manner that there did exist a freshly-dug trench which had been refilled with mud.
“The defendant, Sewerage and Water Board, urges that it did everything possible to protect the public by tamping the filling every two feet and by smoothing it to an extent where it could be walked on by the public.
“It is true, but, unfortunately, either through the negligence of their employees in filling and tamping it or either as a result of the rain that night, the condition which was created by the Sewerage and Water Board became a trap to the public and ■ there was nothing to warn the public that such a trap existed.
“On the contrary, the public was invited to walk, because it was an effort of the employees of the Sewerage and Water Board in refilling this trench to give it the appearance that it may be walked upon and to give the appearance that it was part of the entire sidewalk.
“The fact that a lady of unusual weight did step on it and the weight may have caused some of the caving in or some of the giving ’way of the mud is certainly no answer to the failure of the Sewerage and Water Board to warn the public what this Court believes to be a most dangerous condition and one of entrapment.
“All of the testimony points to the truthfulness of the testimony of the plaintiff and there has been no testimony offered which would in anyway contradict the story that she gave.
“As a matter of fact, it is rather affirmed by the testimony of other witnesses who merely testified as to the condition of the trench after it was refilled.
“Accordingly, there must be judgment in favor of the plaintiff and against the Sewerage and Water Board.
“The Court has and does have a great deal of difficulty in ascertaining the exact amount of the judgment and it is true that in most cases the Courts have difficulty in ascertaining the amount of damages, however, in this case because of the nature of the medical’ testimony and taking into consideration all of the complaints of plaintiff, it is of unusual difficulty.
“First, it must be pointed out that plaintiff is seeking recovery for a great number of ills and pains which she has suffered, which the evidence shows she suffered, not as a result of the accident but as a result of the various physical ailments, such as arthritis and bursitis, diabetes and hypertension, with which plaintiff does suffer.
“The only testimony that points to any injury to the plaintiff as a result of the accident in question, was the testimony of Dr. Jones and others to the effect that the only injury received as a result of the accident in question was an injury to the plaintiff’s right arm and shoulder.
*831 “There is no doubt that the plaintiffs right arm and shoulder was injured, but there is great doubt as to the extent of that injury. Dr. Jones merely testified that all he treated was the right arm and shoulder and he commenced that treatment on January 15, 1962 and treated her through April 1, 1963, at which time the plaintiff went to Charity Hospital for treatment.
“At Charity Hospital, pursuant to the records and pursuant to the testimony of Dr. Williams, who was plaintiff’s own witness, she was treated; she was seen on May 27, 1963 and did complain at that time of pain in the left shoulder and did have limited motion.
“In June 17th of 1963, she could elevate her arm to a 90-degree angle. In July 15th of 1963, she had a full range of motion and did not complain of any shoulder pain.
“She did, however, complain of a left hip and knee pain, which I believe all will concede the latter complaints were not the result of the accident.
“She was then treated continuously for pains throughout her body, left knee, left hip, right leg, back of the neck, et cetera, all of which were, as the result of her physical disability, not connected with the injury.
“I do not recall that the record shows of any complaints she made of her shoulder and arm until sometime in the year 1965; as a matter of fact, the Charity Hospital records show that she was at one time discharged on March 5, 1964.
“The Court, from all of the medical testimony, that is, the testimony of Dr. Jones, Dr. Williams and the doctors offered by the defendants, whose reports are part of the record, must conclude that although the plaintiff did suffer an injury to her shoulder and her arm, that injury was totally and completely cured as of July of 1963.
“It is true that she had recurring pains and recurring inability to use the shoulder and the arm after the July 15, 1963 date until the present time and that she has a great deal of pain in her arm and shoulder; however, that pain at the present time does not seem to stem in any way from the accident, but rather from her arthritic and bursitis condition, at least the Court is somewhat forced to conclude that from Dr. Williams’ testimony.
“Accordingly, it is felt that judgment in the amount of $3,000.00 would be a fair recovery for the pain and suffering and injury as a result of the accident in question. There will be judgment in that amount in favor of the plaintiff and against the Sewerage and Water Board with all costs and interest from date of judicial demand until paid.”
We perceive no merit in defendant’s alternative plea of contributory negligence. The evidence is convincing that there was an equality in the surface of the backfill mud in the trench and the balance of the sidewalk and there was nothing present which would have forewarned plaintiff that there was danger in stepping on the spot at which she fell.
We have carefully read appellant’s brief and do not find where it seriously challenges the amount of the award of damages made in plaintiff’s favor. Considering the medical testimony, we do not see where the trial judge, who had wide latitude in fixing the amount of the judgment, abused his discretion and there is no reason to disturb the judgment.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.