496 So.2d 1019 (1986)
SEWERAGE AND WATER BOARD OF NEW ORLEANS
v.
CIVIL SERVICE COMMISSION OF the CITY OF NEW ORLEANS.
No. 86-C-1485.
Supreme Court of Louisiana.
October 30, 1986.
*1020 John D. Lambert, Jr., Gerard M. Victor, for applicant.
Ralph D. Dwyer, Jr., Okla Jones, II, City Atty., Bruce E. Naccari, Asst. City Atty., for respondent.
CALOGERO, Justice.
The Civil Service Commission for the City of New Orleans specifies in its Rule XII, entitled "Layoffs," procedures which are being implemented by the Commission and the City in its current fiscal crisis.[1] An integral part of that Rule entails grouping all classified employees in designated classes in every agency, board, commission and department within the classified service,[2] ranking those employees, then commencing a servicewide reduction of personnel in the designated classes in order to accomplish the layoffs or job abolition required (by the City proper in this instance). The order of selection of the employees chosen for discharge comes from the list aforementioned and in inverse order. It is accompanied by transfers of ranking employees, in the agency, board, commission or department, the organization unit which due to fiscal constraints has had to reduce *1021 its personnel, to other agencies, boards, commissions or departments within the city's classified service. A consequence of applying Rule XII in this instance has been the discharge of Sewerage and Water Board personnel in order to make room for the transfer of higher ranked employees from other city agencies, boards, commissions or departments.[3]
The Sewerage and Water Board, protesting that the pooling or grouping of its employees with other members of the classified system is illegal, brought suit for declaratory judgment, seeking to have the court decree that (1) the Board and the City are separate and distinct entities and the Board is not required to employ, without its concurrence and consent, any of the employees of the City who are transferred or laid off under, and by virtue of the layoff policy established by the Commission and/or to reduce in grade and/or discharge any of its own employees to accommodate any City employees; (2) the Commission exceeded its constitutional authority by adopting the layoff plan established by Rule XII which would require the transfer of employees from one appointing authority (City) to another (the Board) without the receiving authority's concurrence and/or consent; (3) Rule XII was unreasonable and/or violated the constitutional rights of Board employees or interfered with the internal affairs and management authority of the Board; and that (4) the Commission acted illegally and unconstitutionally by adopting the amendment to Rule XII on March 13, 1986, without hearing or notice of hearing to interested parties.
After the Sewerage and Water Board amended its petition to include a prayer for restraining order and preliminary and permanent injunctions, the City Civil Service Commission answered, and the City intervened. The Board moved for, and secured, a favorable judgment on motion for summary judgment. The Orleans Civil District Court judge to whom the case was assigned gave brief reasons for favoring the Board's position. He said that the Board and the City are separate and distinct entities with separate funding power, retirement systems and appointing authorities, the Board has authority to hire its own employees, and R.S. 33:2408 prohibits transfer of employees to the Board without consent of the Board as appointing authority of its own employees. The trial judge adopted the Sewerage and Water Board's position that the Civil Service Commission does not have the constitutional authority to pool the Board's classified employees with other classified employees when they apply their Rule on layoffs, Rule XII.
Supported by an excellent opinion, the court of appeal, 492 So.2d 1255, reversed the district court's summary judgment and held that the Sewerage and Water Board and its employees must "comply with the orders of the Commission issued in furtherance of the Commission's Rule XII, including the transfer of city employees to the Sewerage and Water Board and the resultant layoff of Board employees whenever necessary."[4] We granted writs to determine whether the City Civil Service Commission had the constitutional authority to adopt Rule XII and apply it, as they did, to groups, or pools, of classified employees of the Sewerage and Water Board and classified employees of "other" agencies, boards, commissions and departments of the City of New Orleans.
The Civil Service Commission is a constitutionally created body.[5] Its powers are *1022 defined in 1974 La.Const. art. X, § 10(A)(1), within Part I, State and City Civil Service. That section provides in pertinent part:

Each commission is vested with broad and general rule-making and subpoena powers for the administration and regulation of the classified service, including the power to adopt rules for regulating employment, promotion, demotion, suspension, reduction in pay, removal, certification, qualifications, political activities, employment conditions, compensation and disbursements to employees, and other personnel matters and transactions; to adopt a uniform pay and classification plan; ... and generally to accomplish the objectives and purposes of the merit system of civil service as herein established. (emphasis added)
Because the Commission's rule making power is constitutional, those Rules, regulating the classified service and consistent with the powers specified in the 1974 Constitution (see in particular, art. X § 10(A)(1), "Powers"), prevail over conflicting legislative acts.[6]See for example, Smith v. Department of Health & Human Resources, 416 So.2d 94 (La.1982) and Hubbard v. Department of City Civil Service, 466 So.2d 772 (La.App. 4th Cir.1985).
One argument in support of the Sewerage and Water Board's position that the Commission does not have the authority to pool the Board's employees with the other classified personnel in the City Civil Service is that R.S. 33:2408 prohibits the transfer of employees to the Board without the Board's consent. R.S. 33:2408 states in pertinent part:

No employee shall be transferred from a position in one organization unit to a position in another organization unit without the consent of the appointing authorities of both units concerned, except as otherwise specifically provided in this Part. (emphasis added)
Standing alone, R.S. 33:2408 would appear to be applicable to transfer of employees in the layoff process. However, that statute is not controlling here because legislative acts are inferior to the constitutional rule making power of the Commission.
What controls here are the Rules of the Commission. And these Rules, since 1953, have included both a "Transfer" provision (Rule VI, § 1.2) and a "Layoff" provision (Rule XII).[7] Rule VI, § 1.2, governing transfers, is in pertinent part identical to the major portion of R.S. 33:2408. Rule VI, § 1.2 provides that "[n]o employee shall be transferred from a position in one organization unit to a position in another organization unit without the consent of the appointing authorities of both units concerned." Rule XII, governing layoffs, sets forth a comprehensive procedure for administering the discharge of numerous employees. That procedure includes the transfer of employees between agencies, boards, commissions, and departments, as has already been explained. With regard to transfers as part of the layoff procedure of Rule XII, there is no requirement for the consent of appointing authorities of the respective units, as is the case with Rule VI, § 1.2.
These two rules must be read together. Rule VI governs the transfer of "an employee" in the normal employment process, while Rule XII and its included transfer procedures governs the layoff of numerous employees, such as the present situation, where the City has been forced to dismiss hundreds of its workers. This same interpretation is urged by the Commission and was accepted by the court of appeal, which articulated that interpretation as follows:

*1023 [T]he provisions of Sec. 1.2 of Rule VI prohibiting the transfer of an employee from one organizational unit to another without the consent of the appointing authorities of both units apply solely to vacancies that are to be filled in the normal employment process, and, ... the Commission's Rule XII, entitled "Layoffs", is intended to exclusively govern all matters affecting employee layoffs. The Commission denies that any conflict exists between Rule XII and Sec. 1.2 of Rule VI provided they are read together, with Rule XII applying specifically to layoffs and Rule VI applying to transfers other than those required by layoffs.
Sewerage and Water Board v. Civil Service Commission, 492 So.2d 1255, 1257 (1986). For the reasons expressed above R.S. 33:2408 is neither applicable nor controlling in this situation.
The Sewerage and Water Board does not take the position in this litigation that their employees are not in the classified service or not under City Civil Service. Indeed they could hardly do so. The statute creating the Sewerage and Water Board has from its enactment in 1899, continuously provided that all but the executive director, the general superintendent, and the Board of Advisory Engineers, are in the classified service; that is, they are in the City Civil Service.
Section 13 of Act No. 6 of 1899, Ex.Sess. which created the Sewerage and Water Board provided:
Be it further enacted, etc., That the said board shall have power and authority to employ all the necessary clerks, engineers, firemen and other skilled and unskilled employees necessary and proper to the efficient administration, operation and control of the said public sewerage and said public water system. All such employees, except unskilled laborers, shall be appointed only after they have passed the civil service examination by the Civil Service Commissioners of the City of New Orleans. They shall hold their positions during good behavior, and shall be removed only for cause and after hearing by the Civil Service Commission. The general superintendent shall have authority to suspend an employee for cause until trial before the commission. Nothing herein shall be construed as preventing the board from dispensing with the services of unnecessary employees. Civil service rules shall not apply to the Secretary, the General Superintendent or to the Advisory Board of Engineers. (emphasis added)
Today section 13 of 1899 La.Acts No. 6, Ex.Sess. is found in the Revised Statutes at Title 33, section 4076.[8] The Fourth Circuit Court of Appeal in Barnett v. Sewerage and Water Board, 51 So.2d 634 (La.App. 4th Cir.1951) [Barnett I] interpreted R.S. 33:4076 as follows:
[W]e immediately focus our attention on this sentence contained in the section, "Civil service rules shall not apply to the secretary, the general superintendent, or to the board of advisory engineers." There is no question in our minds that this negative has the force and effect of an affirmative. In providing that civil service rules shall not apply to the secretary, general superintendent, or to the board of advisory engineers, the meaning is perfectly manifest that civil service rules shall apply to all other employees, except unskilled laborers. Therefore, if "civil service rules" are applicable, *1024 how can it be said that in the case of new employment those rules are relaxed. There is no merit in the contention that Sec. 13 imposed only a limited civil service system upon the Sewerage & Water Board of New Orleans. Civil service would count for little if the appointing authority may shuffle the places on the eligibility list at will. (emphasis added)
In support of its conclusion that Sewerage and Water Board employees are members of the classified service, Barnett I relied on the legislative history of section 13 of Act No. 6 of 1899, Ex.Sess.
Section 13, Act No. 6 of 1899, Ex.Sess., has a long history. It was amended by Act No. 111 of 1902, Act No. 101 of 1942, Act No. 15 of 1944, Act No. 489 of 1948, and by LSA-RS 33:4076. Notwithstanding the amendments, the language originally contained in Sec. 13 was not changed in any material respect, and the purpose of the amendments was merely to supply additional provisions to the section, with which we are not concerned in this case and which we might say do not add to or detract from the language contained in the section as it was originally written. Therefore, the first amendment to the section in 1902 occurred when Act No. 89 of 1900, which provided for a civil service system for the City of New Orleans, was in effect. It undoubtedly was the intention of the General Assembly of 1902 to make the Sewerage & Water Board of New Orleans amenable and subject to the civil service rules prevailing in the City of New Orleans as established by Act. No. 89 of 1900, otherwise it would have unequivocally said so.
The same trend of reasoning can be applied to the later amendments to Section 13, namely, Act. No. 101 of 1942, Act No. 14 of 1944, Act No. 489 of 1948, and LSA-RS 33:4076. All of these amendments were subsequent to the enactment of Act No. 171 of 1940,[[9]] and if the Legislature did not intend that the Sewerage and Water Board of New Orleans should be controlled by the City Civil Service Law, Act No. 171 of 1940, it would have said so.
Id. at 636-37.
Section 13 was again amended by Act No. 413 of 1968 and by Act No. 62 of 1976, and finally most recently by Act No. 627 of 1980. In none of the statutes over these many years since 1899 has the Legislature cast doubt on the fact that Sewerage and Water Board employees are and continue to be members of the classified service.
The Sewerage and Water Board thus admits that their employees are in the classified service and under the authority of the City Civil Service Commission of the City of New Orleans. They contend, however, that the Sewerage and Water Board is a separate and distinct corporate or political entity, not part of the City of New Orleans, and to the extent the Legislature has placed their employees in the classified service under the City Civil Service Commission, the Legislature has simply created a separate and distinct classified system under the administration of that constitutional body. Thus, the New Orleans City Civil Service Commission wears two hats, or administers two separate and distinct systems, at least insofar as they are precluded from grouping employees of the City and *1025 the Sewerage and Water Board, and/or otherwise interfering with the Sewerage and Water Board's distinct and separate existence and operation in relation to the City of New Orleans, according to the Board.
The Sewerage and Water Board was created in 1899. Because created by the Legislature, it can be argued that the Board is a political subdivision of the State of Louisiana, a description used by the Fourth Circuit Court of Appeal in Warfield v. Fink and McDaniel Plumbing and Heating, 203 So.2d 827 (La.App. 4th Cir.1967). "The Sewerage and Water Board is an agency or subdivision of the State." Id. at 828. As authority for that statement, however, the Fourth Circuit cited only State ex rel Porterie v. Walmsley, 162 So. 826 (La. 1935). In Porterie, this Court had to determine whether Act 36 of 1934, 2nd Ex.Sess., reconstituting the membership of the Sewerage and Water Board violated article XIV, section 22 of the 1921 Constitution which prohibited the Legislature from appointing any board or commission in the City of New Orleans "controlling the ordinary governmental functions of municipal government." In upholding the act, this Court merely held, over a vigorous dissent by Chief Justice O'Neill, that:
[T]he operation of the sewerage and water board controlling the drainage, sewerage, and water supply of New Orleans is not an ordinary governmental function of the municipal government, but the performance of a governmental function delegated to that board and the city of New Orleans by the sovereign state of Louisiana.

162 So. at 843. (emphasis added)
Exemplifying the Board's "separate and distinct" character, the Board also points to the Sewerage and Water Board's separate funding source and governing authority. The Sewerage and Water Board does have a separate funding source;[10] and its governing executive body is a board, different from, if not fully separate and distinct in composition from, the City's governing executive and legislative bodies (the office of the Mayor and the City Council).[11]
On the other hand, the Sewerage and Water Board was organized and constituted "[t]o make effective the vote and levy of the special tax by the property taxpayers of the City of New Orleans for water, sewerage and drainage purposes." Preamble to Act No. 6 of 1899, Ex.Sess. The Board is required to present annually to the City Council a detailed report of its "acts, doings, receipts, disbursements and expenditures." R.S. 33:4091. Also, when it is necessary to expropriate property for the Board, the City institutes the expropriation proceedings and the title to property so acquired is taken in the name of the City. Title to all public works constructed and all property acquired by the Board is vested in the City of New Orleans. R.S. 33:4078. The ad valorem taxes which fund *1026 the Sewerage and Water Board are levied and collected by the City and placed in a special account overseen by the City's Board of Liquidation. See for example R.S. 33:4094. Also, the proceeds from the Board's sale of revenue bonds are placed in special accounts overseen by the Board of Liquidation. See for example R.S. 33:4096(B)(8). Disbursements to the Board from the Board of Liquidation are made in the form of warrants. The Board must get the approval of both the Board of Liquidation and the City Council when it fixes water and sewerage rates and for its bond proposals. Bonds subsequently issued are in the name of the City.
It is not essential to the decision in this case that we determine precisely whether the Sewerage and Water Board is an agency or subdivision of the state nor whether, and the extent to which, it is "separate and distinct" from the City of New Orleans. What this Court must decide is whether the City Civil Service, or classified service, governed by the Civil Service Commission for the City of New Orleans includes the employees of the Sewerage and Water Board.
In deference to the Board's distinct governing body and its separate funding sources, the Sewerage and Water Board has, at least since 1954, been designated in the Home Rule Charter of the City of New Orleans as an unattached board of the City. Home Rule Charter, City of New Orleans, art. V, ch. 3 (1954). And no doubt in deference to the nature of the Sewerage and Water Board as a part of city government (although an unattached board of the City) and the Legislature's decision when creating the Board in 1899 to place the Board's employees under the authority of the City Civil Service Commission, the redactors of the pertinent 1921 and 1974 Constitutional provisions did indeed place the Board's employees in the City Civil Service and thus under the authority of the City Civil Service Commission.
1921 La.Const. art. XIV § 15(A)(3) defined the City Civil Service as "all offices and positions of trust and employment in the employ of the City, or any department, independent agency or other agency, board or commission thereof" (emphasis added). The 1974 Constitution reduced the verbiage but not the substance of the 1921 Constitution[12] when in article X, section 1(B) it perpetuated the City Civil Service and recited that "City Civil Service is established and includes all persons holding offices and positions of trust or employment in the employ of each city having over four hundred thousand population, and in every instrumentality thereof" (emphasis added).
Jurisprudentially, it has been no different. The courts have consistently recognized that Sewerage and Water Board employees are members of the City Civil Service and under the authority of the City Civil Service Commission. In Barnett v. Sewerage and Water Board of New Orleans, 51 So.2d 634 (La.App.4th Cir.1951) [Barnett I] the Board hired a worker who had passed the civil service examination administered by the Civil Service Commission of New Orleans but who was not among the first three names on the list of eligible employees maintained by the Commission. While a Commission rule required that the Board could only hire from the first three slots on the eligible list, the Board maintained that it was not governed by that Commission rule because the statute placing the Board under the authority of the Civil Service Commission (R.S. 33:4076) only required that an employee must first pass the Civil Service Exam.
In holding that the Board acted illegally in hiring the employee in contravention of the Commission rule, the Barnett I court ruled that the various legislatures in enacting and amending R.S. 33:4076 and its predecessors had intended that all of the *1027 Civil Service Commission rules, and procedures contained in the Commission rules, applied to Board employees and not just the rule that prospective employees had to pass a civil service exam administered by the Commission in order to be employed by the Board.
In providing by Sec. 13 that certain of its employees shall be appointed by the Sewerage & Water Board of New Orleans only after they had passed the civil service examination by the Civil Service Commission of the City of New Orleans, and that civil service rules shall not apply to certain other employees ...[,] [w]hat the several Legislatures did was to place certain employees of the Sewerage & Water Board on a parity with the municipal employees of New Orleans, by referring to and adopting for their benefit the procedures contained in the prevailing statutes controlling civil service in New Orleans.
Barnett v. Sewerage and Water Board of New Orleans, 51 So.2d 634, 637 (La.App. 4th Cir.1951).
Seventeen years later, prior to the adoption of the 1974 Louisiana Constitution, another civil service dispute arose between the Board and the Commission. In Sewerage & Water Board v. Barnett, 225 So.2d 381 (La.App. 4th Cir.1969) [Barnett II] the issue was whether the Board could pay its employees at a pay scale higher than City employees. Even though the City Council had authorized the raise to Board employees and the Board had the adequate funds for the raise, the Civil Service Commission refused to authorize the pay raise, arguing that La.Const. art. 14, § 15 I(b) and (c) (1921)[13] required that all classified employees City as well as Board personnel, be paid according to one uniform pay plan. Admitting that it was part of the City Civil Service of the City of New Orleans and that Commission rules did apply to its employees, the Board nonetheless asserted that it was an autonomous political corporation and the governing body with respect to all activities pertaining to the Sewerage and Water Board and, as such, had the independent authority to approve the pay plan and put the plan into effect. The court of appeal disagreed, holding that La. Const. art. XIV, § 15(I)(b) and (c) (1921) did require a uniform pay plan for all classified employees, including the Board employees. In so holding the court stated:
A major intent and purpose of civil service is to insure uniformity among employees covered thereby, to the end that such employees in a particular class will enjoy equal and uniform rights with others in the same class regardless of the department, agency, board or commission in which they may be employed.
Sewerage and Water Board of New Orleans v. Barnett, 225 So.2d 381, 384 (La. App. 4th Cir.1969). (emphasis added)
In reply to the assertion that the Board, because of its "separate and distinct" characteristics, was a "governing body" referred to in La. Const. art. 14 § 15(I)(c) (1921), the Barnett II court stated:
It is true, as appellant and intervenors argue, that the Sewerage and Water Board has many of the attributes of an autonomous political corporation. However, this does not result in that Board being the "governing body", i.e., the *1028 body with authority to approve the proposed pay plan and thus make the same effective, referred to in LSA-R.S. 33:2406. The statute itself and, more important, the above quoted constitutional provision contained in Art. 14 15(I)(c) plainly state that the "governing body" referred to is the governing body of the city. The governing body of the City of New Orleans is the Council of the City of New Orleans.
225 So.2d at 384.
In the last of the Barnett cases, Sewerage and Water Board of New Orleans v. Barnett, 255 So.2d 637 (La.App. 4th Cir. 1971) [Barnett III] the Sewerage and Water Board asserted that it was a "principal department" of city government under La. Const. art. XIV, § 15(G)(a)(2) (1921) and thus entitled to four unclassified positions. The court held that the Board was not a principal department of the city under 15(G)(a)(2), but rather a City Board under 15(G)(a)(2), and thus entitled to only three unclassified positions.
So, whatever the relationship between the City and the Board, whether autonomous, separate and distinct political bodies, fiscally independent in part, or whatever, there is no question but that the Sewerage and Water Board is a part of City government and that employees of this "unattached" board of the City of New Orleans are classified employees and are part of the "City Civil Service."
Having decided that Board employees are part of the "City Civil Service," we must now decide whether the City Civil Service Commission wears two hats or has been commissioned to administer two separate and distinct civil service systems. There is no legal or logical support for that position.
La.Const. art. X, § 2(A) provides that "[c]ity civil service is divided into the unclassified and the classified service." La. Const. art. X, § 4(A) states: "A city civil service shall exist in each city having a population exceeding four hundred thousand...." La.Const. art. X, § 1(B) states: "The city civil service is established and includes all persons holding offices and positions of trust or employment in the employ of each city having over four hundred thousand population and in every instrumentality thereof." (emphasis added)
The Constitution thus creates a single City Civil Service Commission for the City of New Orleans. And it speaks of that single "City Civil Service" as consisting of all employees in the employ of the City of New Orleans and in every instrumentality thereof. One such instrumentality of the City of New Orleans is the Sewerage and Water Board, referred to in the Home Rule Charter as an "unattached" board of the City.
There is only one constitutionally authorized City Civil Service Commission, and that for the only city with a population over 400,000 at present, namely, the City of New Orleans. That classified service or city civil service is administered by the City Civil Service Commission for the City of New Orleans. That single classified service includes the employees of the Sewerage and Water Board.
Another argument asserted by the Board is that the Commission's application of Rule XII with the resulting transfer of employees to the Board and the concomitant layoff of Board employees violates La.Const. art. VI, § 14, which states:
No law requiring increased expenditures for wages, hours, working conditions, pension and retirement benefits, vacation, or sick leave benefits of political subdivisions employees, except a law providing for civil service, minimum wages, working conditions, and retirement benefits for firemen and municipal policemen, shall become effective until approved by ordinance enacted by the governing authority of the affected political subdivision or until the legislature appropriates funds for the purpose to the affected political subdivision and only to the extent and amount that such funds are provided. This Section shall not apply to a school board.
*1029 According to counsel for the Board, the application of Rule XII creates a financial burden on the Board in a number of respects: (1) the Board is forced to pay unemployment compensation to those Board employees dismissed; (2) the Board is required to fill vacant positions which the Board, for fiscal reasons, may not desire to fill; (3) the Board's pension system could be affected if a terminated Board employee is vested; (4) the Board would likely have to pay a transferred City employee a higher salary because he would necessarily outrank a terminated one; (5) the Board would lose production in that it would be required to lay off experienced personnel trained in specific Board jobs and replace them with transferees who have the same job classification under the Civil Service system but are unfamiliar with their new positions.
The Board's contention is without merit. First of all, even "law(s) providing for civil service" are excepted from the proscription of article VI, section 14. More significantly, however, the financial burdens of which the Board complains are not the consequences of any "law" within the contemplation of article 6, section 14. Those alleged burdens are the consequences of the exercise of constitutional authority by a constitutional body, the City Civil Service Commission. They are consequences of the constitutionally authorized adoption of Rules by the Commission. As this Court in New Orleans Firefighters v. Civil Service Commission, 422 So.2d 402 (La.1982) said:
This section [§ 14 of article VI, 1974 La.Const.] acts as a limitation upon the otherwise plenary lawmaking power of the Legislature recognized by Art. 3 § 1 of the Constitution. It provides that legislation increasing a political subdivision's employee benefits shall not become effective until approved by its governing authority or until the legislature appropriates funds for the purpose.
Id. at 406. (emphasis added)
Article VI, section 14 is not offended by application of the Commission's Rule XII on "Layoffs".
The Board's sole remaining argument is that the Commission's Rule XII prior to its amendment on March 13, 1986, did not apply to the Sewerage and Water Board and that the 1986 amendment was not preceded by adequate hearing or notice of hearing to interested parties. We need not address the latter contention because we find no merit in the former, i.e., the argument that Rule XII did not apply to the Sewerage and Water Board prior to the March 13, 1986 amendment.
Prior to the March, 1986 amendment Rule XII § 1.1 recited that "If it becomes necessary to reduce the working force in an organization unit of City government." (emphasis added) The Commission on March 13, 1986, amended Section 1.1 to read "If it become necessary to reduce the working force in the classified service." (emphasis added)
That change was unnecessary. It made no change as regards Sewerage and Water Board employees. They were already covered by, and/or included within Rule XII prior to the amendment. "Organization unit of city government" had already included the "unattached" Sewerage and Water Board, for all the reasons more fully recited earlier in this opinion. More specifically, organization unit is defined in Rule I, § 1.32 (in effect when Rule XII was amended) as "any agency, board, commission or department of City government that is designed by rule or regulation as a complete governmental unit for purposes of administration of this law." Surely, just as the Board, we have determined, is an "instrumentality" of the City pursuant to 1974 Const. art. X, § 1(B), the Board is an organization unit to which the Commission made applicable its Rule XII, "Layoffs", even before the March, 1986 amendment.
There is no merit to any of the arguments put forth by the Sewerage and Water Board. The Civil Service Commission's Rule XII and their implementation of that Rule in this instance is legally correct and permissible. The court of appeal was correct in reversing the district court and *1030 granting judgment in favor of defendant, the Civil Service Commission of the City of New Orleans and its individual members, and in favor of the intervenor, City of New Orleans, dismissing the petition of plaintiff, the Sewerage and Water Board of New Orleans.

Decree
For the reasons assigned, the judgment of the court of appeal is affirmed.
AFFIRMED.
NOTES
[1] Rule XII, entitled "Layoffs," as amended May 13, 1986, provides in pertinent part:

Sec. 1.1 If it becomes necessary to reduce the working force in the classified service because of fiscal constraints or some other cause, the appointing authority of the organization unit affected must notify the Director of Personnel before a layoff of employees can be initiated.
* * * * * *
Sec. 4.1(e) Upon receipt of this designation of class(es) all classified employees in the designated class(es) in every agency, board, commission, and department shall be ranked as a group, in accordance with the provisions of Section 4 and 5 of this Rule. Upon completion of the ranking of all classified employees in the designated class(es) throughout the classified service, a service-wide reduction of personnel in the designated class(es) shall commence.
* * * * * *
Sec. 4.3 Upon completion by the Civil Service Department of the mechanics of the layoff steps, transfers shall be effected for those employees whose present positions have been abolished, but who have a higher rank on the service-wide layoff list than other employees in organization units throughout the classified service....
[2] The classified service consists of the employees in the City Civil Service, which is defined in La.Const. art. 10, § 1(B):

City Civil Service. The city civil service is established and includes all persons holding offices and positions of trust or employment in the employ of each city having over four hundred thousand population and in every instrumentality thereof.... (emphasis added)
[3] In this instance, employees were transferred to the Sewerage and Water Board, and not the reverse. Application of Rule XII when and if the Sewerage and Water Board is forced to layoff workers may result in the transfer of ranking Sewerage and Water Board workers to other agencies, boards, commissions or departments.
[4] Because the Sewerage and Water Board had moved for summary judgment at the trial court level and the Commission had filed an exception of no cause of action, the court of appeal saw no need to remand the case for further proceedings in the trial court.
[5] 1974 La.Const. art. X, § 4(A) states:

A city civil service commission shall exist in each city having a population exceeding four hundred thousand....
[6] 1974 art. X, § 10(A)(4) states:

Rules adopted pursuant hereto shall have the effect of law and be published and made available to the public....
[7] Not until 1981 did Rule XII require the pooling of all classified employees and the transfer of ranking employees to other agencies, boards, or commissions.
[8] R.S. 33:4076 provides in pertinent part:

[T]he board may employ all necessary clerks, engineers, firemen, and other skilled and unskilled employees necessary and proper to the efficient administration, operation and control of the public sewerage, water, and drainage systems. All the employees, except unskilled laborers, shall be appointed only after they have passed the civil service examination administered by the civil service commissioners of the city of New Orleans. They shall hold their positions during good behavior and shall be removed only for cause. Nothing herein shall be construed as preventing the board from dispensing with the services of unnecessary employees. Civil Service rules shall not apply to the executive director, the general superintendent or the Board of Advisory Engineers. (emphasis added)
[9] Act No. 171 of 1940 defined the City Civil Service as follows:

"`City service' or `civil service of the city' means all offices and positions of trust or employment of the city, any department, agency, board or commission thereof...."
The definition in the above act was substantially the same used to define City Civil Service in the 1952 amendment which placed a City Civil Service in the 1921 constitution. If anything, this minor change in the language of this 1952 constitutional amendment can be read as more broadly encompassing boards or agencies like the Sewerage and Water Board. "Any department, agency, board or commission thereof" was changed to "any department, independent agency, or other agency, board or commission thereof" La.Const. art. 14, § 15(A)(3) (1921, as amended in 1952) stated in relevant part:
(3). City service. "City Service" or "Civil Service of the City" means all offices and positions of trust or employment in the employ of the city, or any department, independent agency or other agency, board or commission thereof.... (emphasis added)
[10] The maintenance and operating expenses plus the money necessary for capital expansion and improvements to the water, sewerage, and drainage system of New Orleans is obtained by the Board through three basic sources. First, the Board is authorized to fix rates (service charges) to charge customers for both water and sewerage service. R.S. 33:4091, R.S. 33:4121. Second, the state requires the City of New Orleans to levy specific ad valorem millage taxes for the Sewerage and Water Board. See for example R.S. 33:4095, R.S. 33:4124, R.S. 33:4137, R.S. 33:4147. Third, the Board is authorized to issue various types of revenue bonds payable out of either revenues received out of the ad valorem taxes or from the proceeds for its service charges. See, R.S. 33:4095, R.S. 32:4097, R.S. 33:4121, R.S. 33:4125, R.S. 33:4138, R.S. 33:4148. Also indicative of the Board's financial independence is R.S. 33:4093, which relieves the City of the duty of providing in its annual budget or otherwise for the maintenance and operation of the public sewerage and water system.
[11] According to R.S. 33:4063 the Board is composed as follows: (1) the mayor; (2) two at large members of the council; (3) one district councilman chosen by the council; (4) two members of Board of Liquidation appointed by mayor; (5) seven New Orleans residents appointed by the mayor with advice and consent of the council. At present the terms of office of Board members are nine years. Pursuant to R.S. 33:4073, the mayor is the ex-officio president of the Board. The Board elects an executive director who holds office at the pleasure of the Board.
[12] Notably absent from the constitutional debates over Art. X, the article establishing Civil Service, was any discussion over the reduced verbiage in the definition of City Civil Service in Art. 10, § 1(B). See 9 Records of the Louisiana Constitutional Convention of 1973, Convention Transcripts 2594-2824. See also New Orleans Firefighters Association v. Civil Service Commission, 422 So.2d 402, 409 (La.1982).
[13] Prior to the 1972 amendment to La.Const. art. XIV, § 15(I) (1921) which deleted subsections (a), (b) and (c), art. XIV, § 15(I) stated in pertinent part:

[The State and City Civil Service Commission shall adopt:]
(b) A classification plan, prepared and submitted by the Director or already in existence, requiring the classification of positions in the classified service accorting to similarity of duties performed and responsibilities assumed, so that the same qualifications may reasonably be required for, and the same schedule of pay may be equitably applied to all positions in the same class....
(c) Rules fixing minimum, maximum, and such intermediate rates of compensation as may be necessary, and establishing uniform pay plans and amendments thereof from time to time.... Each employee shall be paid at one of the rates set forth in the pay plan for the class of position in which he is employed.... [A] pay plan and amendments thereto for any city shall become effective only after approval by the governing body of said city.